912 F.2d 1542
 UNITED STATES of America, Appellee,
v.
Esnoel LOPEZ-PENA, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Hector BURGOS, a/k/a "Tito," Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Elvin Perez SOTO and Fernando Rupert-Gonzalez, Defendants,
Appellants.
UNITED STATES of America, Appellee,
v.
Santos Jesus MARTINEZ-TORRES, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Luis Alfredo MARTINEZ-TORRES, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Epifanio MARTINEZ-TORRES, a/k/a "Fanny," Defendant, Appellant.
 Nos. 87-2003 through 87-2008.
 United States Court of Appeals,
First Circuit.
 Heard May 5, 1989.
Decided Nov. 22, 1989.
As Amended Dec. 1, 1989.
 
 Maria H. Sandoval, and Law Offices of Nachman & Fernandez-Sein, Santurce, P.R., on brief for movants Esnoel Lopez-Pena and Hector Burgos.
 Luis R. Rivera, Old San Juan, P.R., and Marco Antonio Rigau, San Juan, P.R., on brief for movants Elvin Perez Soto and Fernando Rupert-Gonzalez.
 Pia Gallegos, New York City, and Harry Anduze Montano, on brief, for movants Santos Jesus Martinez-Torres, Luis Alfredo Martinez-Torres and Epifanio Martinez-Torres.
 J. Douglas Wilson, Atty., Dept. of Justice, Washington, D.C., Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., and Jorge E. Vega-Pacheco, Asst. U.S. Atty., San Juan, P.R., on brief for the U.S.
 Before SELYA and ALDRICH, Circuit Judges, and RE,* Judge.
 SELYA, Circuit Judge.
 
 
 1
 Defendants' appeals in these cases had been argued, the panel was agreed on an opinion, and publication was imminent when defendants moved to remand the cases with a direction to dismiss the indictment. Defendants' motions were based upon the announcement of United States v. Gomez, --- U.S. ----, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). In Gomez, a case arising from another circuit, the defendants had objected to empanelment of a felony jury by a United States magistrate rather than by a district judge. Although unsuccessful in the trial court and on initial appeal, United States v. Garcia, 848 F.2d 1324 (2d Cir.1988), defendants' preserved objection was sustained by the Supreme Court and a new trial ordered. 109 S.Ct. at 2245-48.
 
 
 2
 Seizing upon Gomez, appellants before us--none of whom had objected to the magistrate's jury empanelment--filed the instant motions. We ordered the government to brief the matter. Having determined that the motions must be denied, we explain why and simultaneously release our opinion on the merits.
 
 
 3
 * The government's initial contention is that Gomez has only prospective application. Under earlier caselaw, this would likely have been correct. See, e.g., Williams v. United States, 401 U.S. 646, 653-56, 91 S.Ct. 1148, 1152-54, 28 L.Ed.2d 388 (1971) (plurality opinion) (where new constitutional standard does not raise serious questions about accuracy of guilty verdicts in past cases, retroactivity not required); Mackey v. United States, 401 U.S. 667, 672-75, 91 S.Ct. 1160, 1163-65, 28 L.Ed.2d 404 (1971) (plurality opinion) (similar). Decisions such as Williams, 401 U.S. at 656-59, 91 S.Ct. at 1154-56, and Mackey, 401 U.S. at 673-75, 91 S.Ct. at 1163-65, made no distinction for retroactivity purposes between cases pending on direct appeal and cases essaying collateral review.[1]
 
 
 4
 United States v. Johnson, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), signalled a change in direction. There, the Court held that decisions construing the fourth amendment and apparently meeting the Williams benchmark should apply retroactively to defendants whose cases were pending on direct appeal. Id. at 562, 102 S.Ct. at 2593. Johnson, however, did not go the whole hog; for decisions of a constitutional dimension not implicating the fourth amendment, it seemed still desirable to offset against any unfairness to pending defendants the unfairness to the government and the court, if there had been well-justified reliance on prior law, and if retroactive application would produce grave and disproportionate consequences. See id. In the latter circumstance, there would be no retroactivity. Id. at 549-50, 102 S.Ct. at 2586-87. Such reliance could be based upon prior Supreme Court decisions or on "a longstanding and widespread practice to which th[e] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." Id. at 551, 102 S.Ct. at 2588.
 
 
 5
 In Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Court attempted to plot a straighter path, acknowledging, in so many words, that it had come to realize even more fully the wisdom of a distinction long drawn by Justice Harlan, see Mackey, 401 U.S. at 675-702, 91 S.Ct. at 1164-65 (Harlan, J., concurring in part and dissenting in part). The Griffith Court was presented with a defendant convicted by a jury as to which the government had exercised peremptory challenges in a manner held prima facie unconstitutional in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a case decided subsequent to Griffith's trial. Although the prosecutor's action was considered fully proper when taken, the Court held that defendant, on direct review, was entitled to claim the new rule, and hence obtain a new trial. 479 U.S. at 328, 107 S.Ct. at 716. That was so notwithstanding that Batson could be regarded as a "clear break" with past precedent. Id. 479 U.S. at 326, 107 S.Ct. at 715. In short, Griffith held that, for criminal cases still undergoing direct review, even justified reliance on prior law would not prevent retroactivity. Id. at 328, 107 S.Ct. at 716.
 
 
 6
 Although the practical consequences in terms of eligible, nonfinal, defendants are far more extensive in the case of magistrates' empaneling,[2] we think Griffith applies. The government's arguments to the contrary are unpersuasive. Taking its brief chronologically, it states that certain Supreme Court cases, commencing with Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355-56, 30 L.Ed.2d 296 (1971), which the government describes as a civil case interpreting a federal statute, "provide substantial guidance." It would distinguish Griffith as a criminal case involving a constitutional rule of procedure, adding that it "would be unfair to similarly situated defendants and a departure from the Court's adjudicatory function not to apply new constitutional rules of criminal procedure retroactively." We cannot think, however, that criminal defendants whose cases are still pending on direct appeal should be any less entitled to claim the protection of important substantive statutes than of rights found in the Constitution.
 
 
 7
 To downplay Gomez by saying, as does the government, that it involved "a purely procedural statute," is a bit like saying that Willie Mays was "just an outfielder." The thrust of the Court's opinion, and the fair import of its language, support no implication of mere procedural technicality. We find nothing in Griffith, either in terms or purport, distinguishing between constitutional and statutory interpretations; and we see no significant difference in kind for the purpose of retroactivity between the government's improper challenges of jurors whom the defendant might like to have sit and the interposition of an "unauthorized" person to preside over the entire empaneling. We rule, therefore, that the Gomez holding applies to cases, like this one, which were pending on direct appeal when Gomez was decided.[3] Accord United States v. France, 886 F.2d 223, 224 (9th Cir.1989).
 
 II
 
 8
 A more difficult question is whether these defendants, not having objected below, can be heard here on the basis of plain error. In Gomez, the defendants preserved their rights, and the Court was careful to limit its holding accordingly. See, e.g., Gomez, 109 S.Ct. at 2239 (describing "question presented" as "whether presiding at the selection of a jury in a felony trial without the defendant's consent" is a proper office of a magistrate) (emphasis supplied). Here, defendants did not object to the magistrate's oversight of jury empanelment, and we must make an independent determination as to whether failure to interpose such an objection thwarts defendants' avowed reliance on Gomez. The two circuits which have addressed similar questions in Gomez's aftermath reached opposite conclusions. Compare France, 886 F.2d at 227 (Gomez applies despite absence of contemporaneous objection to magistrate's empanelment) with United States v. Wong, 884 F.2d 1537, 1546 (2d Cir.1989) (order denying rehearing) (contra).
 
 
 9
 Ordinarily, the law ministers to the vigilant, not to those who sleep upon their rights. In consequence, a litigant, through counsel, must usually stake out his opposition to a trial court's ruling on pain of forfeiting any right subsequently to complain. There are sound policy reasons for such a praxis: calling an incipient error to the judge's attention alerts both the court and opposing counsel, affording an opportunity to correct the problem before harm is done. The raise-or-waive rule also prevents litigants from having their cake and eating it too: making a strategic judgment and later, should the result prove infelicitous, assigning error; or simply "planting" error, and nurturing the seed as insurance if things go awry.
 
 
 10
 Notwithstanding the strength and salience of these policies, there are exceptions to the raise-or-waive rule. One such exception, now codified in Fed.R.Crim.P. 52(b), is for "plain error". The rubric has been much defined, mostly by way of uncontroversial descriptive generalities: plain errors are those that "seriously affect the fairness, integrity or public reputation of judicial proceedings," United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); or those of such magnitude that "the trial judge and prosecutor were derelict in countenancing" them, United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982); or those that "undermine the fundamental fairness of the trial," United States v. Young, 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). We, ourselves, have described plain errors as "those errors so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings conducted below." United States v. Griffin, 818 F.2d 97, 100 (1st Cir.), cert. denied, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). Courts seem agreed that the doctrine is heavy artillery. It is to be used "sparingly," Frady, 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14; Smith v. Massachusetts Inst. of Technology, 877 F.2d 1106, 1110 (1st Cir.1989); and then only where the error likely had an "unfair prejudicial impact on the jury's deliberations." Young, 470 U.S. at 16 n. 14, 105 S.Ct. at 1047 n. 14.[4] In a nutshell, the anodyne is reserved for use only "in those circumstances in which a miscarriage of justice would otherwise result." Frady, 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14. Accord Griffin, 818 F.2d at 100; Nimrod v. Sylvester, 369 F.2d 870, 873 (1st Cir.1966).
 
 III
 
 11
 Although the idiom of plain error is familiar, its application, as in this case, is often beset with uncertainty.[5] To be sure, we earlier concluded that a criminal defendant who failed to object to a magistrate's empanelment of his jury "waived his right to object," the same not amounting to plain error. United States v. Rivera-Sola, 713 F.2d 866, 872, 874 (1st Cir.1983). Accord United States v. DeFiore, 720 F.2d 757, 764-65 (2d Cir.1983), cert. denied, 466 U.S. 906, 104 S.Ct. 1684, 80 L.Ed.2d 158 (1984). See also United States v. Ford, 824 F.2d 1430, 1434-39 (5th Cir.1987) (en banc) (holding practice to be impermissible, but affirming conviction because defendant "did not object and ... trial was fundamentally fair"), cert. denied, 484 U.S. 1034, 108 S.Ct. 741, 98 L.Ed.2d 776 (1988). But, the Court's ruling in Gomez postdated Rivera-Sola, thus changing the calculus of plain error, if not necessarily the result. The conspicuity of error must be gauged in hindsight, see United States v. Silverstein, 732 F.2d 1338, 1349 (7th Cir.1984), cert. denied, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985); Martone v. United States, 435 F.2d 609, 610-11 (1st Cir.1970), although neither counsel nor the district court are to be charged as if they had advance knowledge of the new ruling. Gomez having altered our coign of vantage, we evaluate the error's plainness afresh.
 
 
 12
 * In hindsight, and given the Gomez Court's holding that the Federal Magistrates Act does not allow delegation of jury selection to magistrates in felony cases, 109 S.Ct. at 2240-47, the error appears obvious. But as we explained above, see supra Part II, plain error requires more than obviousness; unless the error rendered the trial fundamentally unfair, or overlooking it would shock the judicial conscience, then the error is not "plain."
 
 
 13
 Movants' argument for plain error, as we understand it, has four prongs.[6] First, movants seem to suggest that the Gomez Court, which ruled harmless-error jurisprudence inapplicable to the magistrate's empanelment, id. 109 S.Ct. at 2247-48, has preempted our determination. We demur. Saying that "harmless-error analysis does not apply in a felony case in which, despite the defendant's objection ... an officer exceeds his jurisdiction by selecting a jury," id. at 2248, is to say nothing--or next to nothing--about plain error.
 
 
 14
 Simply stated, visualizing plain error and harmless error as flip sides of the same coin is myopic--and wrong. See United States v. Acevedo, 842 F.2d 502, 508 n. 3 (1st Cir.1988); Silverstein, 732 F.2d at 1349; United States v. Blackwell, 694 F.2d 1325, 1340-41 (D.C.Cir.1982); see also 3A C. Wright, Federal Practice and Procedure: Criminal 2d Secs. 851, 856 (1982). The difference in dimension between plain error and reversible error may frequently be small--but it is real. And, the policies which drive the two concepts are largely dissimilar. We agree with the Seventh Circuit that, unlike harmless-error analysis (which focuses on the prejudicial nature vel non of a preserved objection, and thus, seeks to give a diligent defendant his due), excusing a litigant's outright neglect is considerably more disruptive of our system of justice:
 
 
 15
 Reversing a conviction on the basis of an error that the defendant's lawyer failed to bring to the judge's attention is inconsistent with the premises of an adversary system and disruptive of the efficient operation of the criminal justice system. It is justifiable only when the reviewing court is convinced that it is necessary in order to avert an actual miscarriage of justice, which implies the conviction of one who but for the error probably would have been acquitted.
 
 
 16
 Silverstein, 732 F.2d at 1349. See also Griffin, 818 F.2d at 100 (plain error different from "prejudicial" error); McMillen v. United States, 386 F.2d 29, 35 (1st Cir.1967) (same), cert. denied, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968). Cf. Frady, 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14 (plain error rule to be used "sparingly").
 
 
 17
 The next furculum of the quest for plain error is a branch of the first. Our dissenting brother, post at 500, quotes liberally from Gomez to indicate the importance of jury selection and the "basic" nature of "a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside." Gomez, 109 S.Ct. at 2248. Yet, as the Second Circuit has recognized, see Wong, 884 F.2d at 1545, the Gomez Court's concern was with whether the error--to which objection had been preserved--could ever be considered harmless beyond a reasonable doubt. See, e.g., Chapman v. California, 386 U.S. 18, 23-24, 87 S.Ct. 824, 827-28, 17 L.Ed.2d 705 (1967); Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S.Ct. 229, 230-31, 11 L.Ed.2d 171 (1963). Thus, the language in question, read in context, means only that, with respect to this sort of bevue, the Court perceived that there would always be "a reasonable possibility that the [error] complained of might have contributed to the conviction." See Fahy, 375 U.S. at 86-87, 84 S.Ct. at 230-31. But, an error, to be "unplain," need not be harmless beyond all reasonable doubt. More--considerably more, we suggest--is needed to breach the sturdy fortifications surrounding the raise-or-waive rule.
 
 
 18
 In effect, appellants' second line of attack is tantamount to a declamation that the right to have an Article III judge preside at empanelment is so essential to the fairness of a felony trial that it cannot be waived. But, that dog will not hunt. Time and again, courts--including this one--have upheld waivers of rights which strike us as equivalent to, or more basic than, this one.[7] See, e.g., United States v. Figueroa, 818 F.2d 1020, 1025 (1st Cir.1987) (lack of timely objection foreclosed apprehended defendant's argument that he was not brought before magistrate without unnecessary delay); United States v. Bayko, 774 F.2d 516, 517 (1st Cir.1985) (ex post facto defense pretermitted by failure to raise); United States v. Bascaro, 742 F.2d 1335, 1365 (11th Cir.1984) (failure to object at second trial waives double jeopardy defense), cert. denied, 472 U.S. 1017, 1021, 105 S.Ct. 3476, 3488, 87 L.Ed.2d 613, 622 (1985); United States v. Coleman, 707 F.2d 374, 376 (9th Cir.) (fifth amendment claim waived if not raised at trial), cert. denied, 464 U.S. 854, 104 S.Ct. 171, 78 L.Ed.2d 154 (1983); Paul v. Henderson, 698 F.2d 589, 592 (2d Cir.) (same as Bascaro; collecting cases), cert. denied, 464 U.S. 835, 104 S.Ct. 120, 78 L.Ed.2d 118 (1983); United States v. Surridge, 687 F.2d 250, 255 (8th Cir.) (fourth amendment objection waived if not seasonably raised), cert. denied, 459 U.S. 1044, 103 S.Ct. 465, 74 L.Ed.2d 614 (1982); United States v. Goodwin, 612 F.2d 1103, 1105 (8th Cir.) (sixth amendment claim not surfaced at trial should not be considered on appeal), cert. denied, 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844 (1980).
 
 
 19
 Appellants' third effort intimates the existence of some unfairness in this particular empanelment. The insinuations are bogus. We have examined the relevant transcript with care. Magistrate Castellanos fully protected defendants' legitimate rights. The judge was available and, when defendants pressed an objection before the magistrate--as they did anent the proper number of peremptory challenges--the lawyers went before the judge, who resolved the question. The magistrate's preliminary comments to the jury were standard, and defendants voiced no objection (then or now) to any portion of what was said--or not said, for that matter. Questions were addressed to the venire from a prepared form. Once the jury was chosen, the judge--not the magistrate--gave the start-of-trial instructions. From aught that appears, the empanelment was scrupulously fair and the jury was not tainted in any way.[8]
 
 
 20
 The last shot in the sling directs our attention to a further dimension of plain error jurisprudence: the court's discretion. See, e.g., Reilly v. United States, 863 F.2d 149, 161 (1st Cir.1988); United States v. Krynicki, 689 F.2d 289, 291 (1st Cir.1982). The pivotal inquiry here is whether counsel can be excused for not having raised the point below (thus affording the trial court the opportunity to make the correction itself, avoiding wasted effort). Griffin, 818 F.2d at 99-100. The dissent argues that this court had already approved the practice in Rivera-Sola, so that objecting would have been like shouting into a gale-force wind. We are not persuaded.
 
 
 21
 In Rivera-Sola, we held that jury empanelment by a magistrate was not plain error. 713 F.2d at 874. Other comments, although generally approving of the practice, were obvious dicta. We had never sanctioned the practice in the face of a contemporaneous, preserved objection. Put another way, in this circuit, unlike in the Ninth, there was no " 'solid wall of circuit authority' which would have prevented the district court from correcting the alleged error." See France, 886 F.2d at 228 (quoting Guam v. Yang, 850 F.2d 507, 512 n. 8 (9th Cir.1988) (en banc)).
 
 
 22
 The justification for the "solid wall" exception does not pertain in our case. The exception's genesis, as France explained, is that "[o]bjecting in the trial court to a clearly defined rule of the circuit is futile, inasmuch as the trial court cannot overrule authority binding on it." Id. at 228. See also Martone, 435 F.2d at 610-11 (similar). By its terms, the analysis demonstrates why we find the exception inapposite. A single case, the holding of which was dependent on the defendant's failure to object, is hardly a "solid wall." There was no binding rule in this circuit such as necessarily foredoomed an objection to magistrates' empaneling. This is particularly true of a matter like utilization of a magistrate. Even in circuits where courts of appeals had authorized the practice of having magistrates preside at empanelment, no court of appeals had insisted that the practice be followed. The district judge always retained discretion to preside over jury selection. In that sense, then, district courts were never duty-bound in the punctilious observance of circuit precedent to reject objections to the magistrate's participation.
 
 
 23
 What little anecdotal evidence we can find suggests that, in the interval between Rivera-Sola and Gomez, district courts were willing to listen if a felony defendant pressed an objection to having a magistrate preside at the empanelment. See, e.g., United States v. Kelley, No. 84-0029 (D.R.I. May 30, 1984) (upon defendant's objection, magistrate stands down and district judge empanels in felony tax prosecution). Because the precedential wall in this instance was rather porous, there was no valid reason for defense counsel to believe that timely objection to the magistrate's involvement would be futile. For that reason, and because there is not the slightest hint that the empanelment was actually unfair, the jury tainted, or the verdicts affected, we are disinclined to exercise our discretion so as to relieve defendants from the natural consequences of their procedural default.
 
 B
 
 24
 In Gomez, the Court took pains not to foreclose a plain error inquiry. Having blunted the four prongs of defendants' asseverational array, the outcome of our inquiry--unlike the error belatedly assigned--seems plain. None of the suggested obstacles loom sufficiently large to block operation of the raise-or-waive rule. We find no reason to believe that the magistrate--a neutral and detached judicial officer, albeit not statutorily authorized to preside--stacked the deck against defendants, that the jury selected was other than impartial and representative, or that the verdicts were influenced by the fact that Judge Gierbolini did not directly oversee empanelment.
 
 
 25
 We need go no further. Because we discern (1) nothing excusing defendants' decision to forgo contemporaneous objection to the magistrate's participation, and (2) no fair possibility that the error caused justice to miscarry, the convictions should not be vacated. The assigned error was not preserved and cannot be said to have "seriously affect[ed] the fairness, integrity or public reputation" of defendants' trial. Atkinson, 297 U.S. at 160 [56 S.Ct. at 392]. It was, therefore, not "plain." Accord Wong, 884 F.2d at 1544-46. But see France, 886 F.2d at 228.
 
 IV
 
 26
 To recapitulate, we hold that the Gomez doctrine applies retroactively to nonfinal convictions, that is, to felony cases pending on direct appeal. But in this case, the claimed error went unremarked. There are no special circumstances counselling departure from the raise-or-waive rule. Most especially, neither the integrity of the trial nor the accuracy of the guilty verdicts has been impeached. Inasmuch as appellants have been unable to show cause sufficient to excuse the lack of a contemporaneous objection, or prejudice flowing from the magistrate's selection of the jury, their motions to remand must be
 
 
 27
 Denied.
 
 
 28
 BAILEY ALDRICH, Senior Circuit Judge, dissenting.
 
 
 29
 Regretfully I believe that, if not plainly wrong, the court has at least come down well on the far side. In a sense this is all only an intellectual exercise, as the Supreme Court will eventually determine the force of its meaning in Gomez, but we must ourselves do so for the present, and I think we are denigrating it. I believe, too, that my brethren have aided their result by diversionary irrelevancies, and at least one serious collateral error. I will start there.
 
 
 30
 There are many elements that may enter into an appellate determination of plain error, and an important one may be that in this imperfect world a party must, to a very substantial extent, be charged with the failed conduct of trial counsel. Certainly, counsel cannot be allowed to play fast and loose and deliberately hold back for a second chance. Such conduct should, as the court points out, prevent rescue by the invocation of plain error. However, this calls for bad intent. The court speaks of "strategic judgment," and of "insurance if things go awry." I concede that such intent may be inferred from a showing that the error was reasonably apparent. But not only can I not think it was reasonably apparent here, bad faith is conclusively rebutted by the fact that counsel made no change of position on appeal. We have only subsequent happenstance.
 
 
 31
 Another consideration, although I would think it less important, may be to charge the party when counsel, though acting in good faith, negligently fail to make a point initially that, reasonably, should have been made. The court speaks of "minister[ing] to the vigilant," and of "outright neglect." But the standard it then applies, saying that counsel must make any point not foreclosed by a "gale-force wind," or "solid wall," calls for an extraordinary degree of competence. I ask, moreover, even if counsel must assert everything not foreclosed by a solid wall, what was there in any way suggesting that the local rule should have been thought "porous"? (The court is, of course, quite correct in rejecting the thought that counsel is to be judged as if Gomez had already been decided. Martone v. United States, 435 F.2d 609, 610-11 (1st Cir.1970)).
 
 
 32
 Passing this, however, for the moment, there is a second part to the principle of denying relief when counsel's inefficiency caused a failure to assert the error initially. As the court notes, this is not an abstract penalty for poor lawyering, but, rather, the client must suffer because, if counsel had alerted the court, the court might have corrected the error and avoided the reversal later sought. United States v. Griffin, 818 F.2d 97, 100 (1st Cir.), cert. denied, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). The suggestion that the district court here might have done this I must vigorously disagree with.
 
 
 33
 To speak in terms of the court's hunting dog, can it possibly be thought that the Puerto Rico court might have been so moved by defendants' objecting to the magistrate's impaneling that it would have rolled belly-up? The local rule, saving judge time in perhaps lengthy empanelment proceedings, would be dear to the heart of any judge. It had been applied consistently in Puerto Rico for years. There is a similar local rule in the Rhode Island district court, and, I am told, in a substantial number of districts elsewhere. In this posture the court says that no circuit court of appeals "had insisted that the practice be followed." (Emphasis court's). This is to put the ball in the wrong court. Rather, who, anywhere, had ever suggested that this widely endorsed rule should not be used, or, even that it had a possible flaw? We, ourselves, in United States v. Rivera-Sola, 713 F.2d 866 (1st Cir.1986), though not taking the opportunity to reject the rule, but contenting ourselves with holding that, in the lack of objection in the district court, it was not plain error, spoke, for two pages, in terms uniformly complimentary. Saying that the Puerto Rico practice "requires comment," we quoted Congressional history favoring delegating powers to magistrates; the Court's general approval of delegation in Mathews v. Weber, 423 U.S. 261, 267-68, 96 S.Ct. 549, 552-53, 46 L.Ed.2d 483 (1976), and specific approvals of this very practice by other courts and secondary authority. Concluding, "Presiding at the selection of a jury is a recognized 'additional duty' of a magistrate," our final remark was, "We end with a general observation. We think that a magistrate can effectively conduct the voir dire and preside at the selection of juries in civil and criminal cases." 713 F.2d at 872-74.
 
 
 34
 On top of this endorsement, I add that a district court practice as widespread as this one did particularly "require comment" if improper, and that we had only recently been reminded of our supervisory powers. In City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 256, 101 S.Ct. 2748, 2754, 69 L.Ed.2d 616 (1981), the Court took pains to tell us that review of an improper district court practice of broad consequence "should [not] be limited to determining whether 'plain error' had been committed."
 
 
 35
 It can hardly be surprising that in the years following Rivera-Sola the Puerto Rico court had not taken the hint that my brethren seem to think implicit in the fact that we went no further than holding there was no plain error, but evidently preferred our supportive observations. The court says, however,
 
 
 36
 What little anecdotal evidence we can find suggests that, in the interval between Rivera-Sola and Gomez, district courts were willing to listen if a felony defendant pressed an objection to having a magistrate preside at the empanelment. See, e.g., United States v. Kelley, No. 84-0029 (D.R.I. May 30, 1984) (upon defendant's objection, magistrate stands down and district judge empanels in felony tax prosecution).
 
 
 37
 Citing this unreported, single, "example" from another district, I suggest is choosing a straw of the nonsupportive type, and not one showing how the wind blows.
 
 
 38
 In sum, I cannot accept the court's finding that "there is no valid reason for defense counsel [or us] to believe that timely objection to the magistrate's involvement would be futile." As a betting man, which, of course, judges are not, what odds would a bookkeeper have demanded in 1987 for a bet that a Puerto Rico district judge would jettison its local rule on a defendant's objecting thereto? Defendants are being condemned for not perceiving a porosity that I cannot think the court would have recognized in any event.
 
 
 39
 Viewing these matters, together or singly, I conclude that the court has approached the discretionary feature--which I agree can often be an element in plain error rulings--with negative marks against defendants. Instead, there should be none; the single issue should be Gomez, clear and unhandicapped.
 
 
 40
 A final point. The court quotes from opinions to the effect that plain error requires a finding that, but for it, the result would, at least probably, have been different. If that is a universal requirement, I will concede the court's result may be correct. But surely there are procedures that are unacceptable even though it cannot be told that, in the particular instance, the result would have been different. I believe Gomez to be a clear example.
 
 
 41
 The basic holding in Gomez is that a magistrate can not effectively conduct the voir dire and preside at the selection of juries in ... criminal cases,--contrary to our quoted statement in Rivera-Sola. There should not be a residue in our thinking, that he or she is "not quite" up to the job. I detect this, however, in the court's statement that "there is not the slightest hint that the empanelment was actually unfair, the jury tainted, or the verdicts affected." Again, "neither the integrity of the trial nor the accuracy of the guilty verdicts has been impeached." The inquiry should not be aided by a presumption that the magistrate "got by." For present purposes, except for a robe, he was a man off the street. What residual approval is to be found in the Court's words?
 
 
 42
 [V]oir dire [is] "a necessary part of trial by jury." Jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice ... or predisposition about defendant's culpability....
 
 
 43
 . . . . .
 
 
 44
 Far from an administrative impanelment process, voir dire represents jurors' first introduction to the substantive factual and legal issues in a case. To detect prejudices, the examiner--often, in the federal system, the court--must elicit from prospective jurors candid answers about intimate details of their lives. The court further must scrutinize not only spoken words but also gestures and attitudes of all participants to ensure the jury's impartiality. But only words can be preserved for review; no transcript can recapture the atmosphere of the voir dire, which may persist throughout the trial.
 
 
 45
 109 S.Ct. at 2246-47 (citations omitted; emphasis supplied). This is a subtle and, at the same time, forceful analysis and ruling. The Court concluded with the statement that "basic is a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside." Id. 109 S.Ct. at 2248. My brothers discuss the word "jurisdiction." The word was the Court's, not mine. I can only read it as meaning that when no judge was there, that portion of the trial was not legitimate.
 
 
 46
 The court would answer this by saying that plain error was not found in a number of cited cases that "strike us as equivalent to, or more basic than, this one." It cites eight cases. Without going into detail, I see no approach to equivalency in being held to have waived delay in presentation to a magistrate, or alleged denial of speedy trial, or in the admission of evidence or a charge to the jury in a non-basic area. It is true that a failure to allege double jeopardy might be thought plain error, but the law has been settled so long on this issue that it seems in a class by itself. Apart from it, I believe that to call the others equivalent substantially underrates the serious view the Gomez Court took of non-judicial empanelment.
 
 
 47
 The Court's unanimous language in Gomez is positive and strong. I agree with the court in United States v. France, 886 F.2d 223 (9th Cir.1989), that it is not to be diminished by the fact that the Court noted that there had been an objection below. This was not a ruling one way or the other with respect to plain error, but simply a restriction of what was being decided. We frequently engage in such caution ourselves. If it is to be turned into an implied ruling, the whole value of the procedure would be lost.
 
 
 48
 I return to what I said in the beginning, and respectfully dissent.
 
 
 
 *
 Hon. Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation
 
 
 [1]
 Indeed, Williams--a case on direct appeal--was argued and decided together with a companion case, Elkanich v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), which had been brought under 28 U.S.C. Sec. 2255
 
 
 [2]
 Empanelment by a magistrate has been the practice in Puerto Rico (where this case was tried), and many other places, for several years. The government reports, and defendants do not contradict, that at the time Gomez was decided, 51 of the 93 federal judicial districts had local rules which unqualifiedly authorized district courts to delegate jury selection to magistrates in criminal cases. Three such districts--Puerto Rico, New Hampshire, and Rhode Island--lie within this circuit
 
 
 [3]
 We emphasize that our ruling is strictly limited to cases pending on direct appeal. For cases arising on collateral review after convictions have become final, a different set of considerations is implicated. In such cases, new rulings--even those of a constitutional dimension--are not applicable unless the neoteric rules affect primary, private individual conduct, or are so central to an accurate determination of innocence or guilt as to constitute a "bedrock procedural element." Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 1075-77, 103 L.Ed.2d 334 (1989) (plurality opinion); id. 109 S.Ct. at 1079 (White, J., concurring in the judgment) (plurality's result "acceptable" in light of prior caselaw). Thus, we do not in any way intimate that convictions previously finalized are now subject to scrutiny under Gomez. See United States v. Rubio, 722 F.Supp. 77, 84 (D.Del.1989) (Gomez not applicable on collateral review)
 
 
 [4]
 Following the Court's lead, we have often indicated that the probability of a changed outcome, or more, is a condition precedent to overlooking the lack of a contemporaneous objection. See, e.g., United States v. Williams, 809 F.2d 75, 82 (1st Cir.1986) (plain error would be one which "virtually ... insure[d]" a different outcome), cert. denied, 481 U.S. 1030, 1072, 107 S.Ct. 1959, 2469, 95 L.Ed.2d 531, 877; 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377 (1987); United States v. West, 723 F.2d 1, 2 n. 1 (1st Cir.1983) (same), cert. denied, 469 U.S. 1188, 105 S.Ct. 956, 83 L.Ed.2d 963 (1985). The requirement may not be inflexible, but it is of general application
 
 
 [5]
 Professor Wright wryly observed that the cases left him with the impression that appellate courts have not put much flesh on plain error's definitional bones, "save that they know it when they see it." 3A C. Wright, Federal Practice and Procedure: Criminal 2d Sec. 586 (1982), at 337
 
 
 [6]
 Movants do not contend that the magistrate lacked jurisdiction in the sense that the district court lost, or was deprived of, subject matter jurisdiction, thus eclipsing the raise-or-waive rule. See, e.g., Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908); Capron v. Van Noorden, 6 U.S. 126, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The eschewal is prudent. The district court indisputably possessed subject matter jurisdiction throughout, but the magistrate lacked statutory authority to exercise that jurisdiction. The resultant irregularity was procedural, not jurisdictional. See Archie v. Christian, 808 F.2d 1132, 1134-35 (5th Cir.1987) (en banc)
 
 
 [7]
 We have already ruled that errors infringing on the right to an impartial jury, even if not harmless, need not necessarily be deemed plain. See Acevedo, 842 F.2d at 508 & n. 3
 
 
 [8]
 Defendants did object to the magistrate's refusal to accept certain challenges as for cause. Yet, they chose not to pursue the matter with the judge (though he was available). Moreover, the point appears unmeritorious, as none of the challenges seem compelling and defendants did not, insofar as we can ascertain, exhaust their peremptories