NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ZACHARY ALAN WHISENHUNT,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13240
Trial Court No. 4FA-16-00872 CR

OPINION ON REHEARING

No. 2718 — January 21, 2022

Petition on Rehearing of Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Douglas L. Blankenship, Judge.

Appearances: Jane B. Martinez, Law Office of Jane B. Martinez, Anchorage, under contract with the Office of Public Advocacy, for the Appellant. RuthAnne Beach, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Terrell, Judges.

PER CURIAM.

This Court recently issued a memorandum decision in which we affirmed Zachary Alan Whisenhunt's convictions for second-degree murder and evidence

tampering.[1]  But, citing our decision in *Phornsavanh v. State*, we remanded the case to the trial court for reconsideration and/or clarification of its ruling on Whisenhunt's motion for a new trial on the ground that the jury verdict was contrary to the weight of the evidence.[2]

The State subsequently filed a petition for rehearing, arguing that it was error for this Court to rely on *Phornsavanh* because neither party discussed that case in its briefing.  The State also asserts that the standard set out in *Phornsavanh* constitutes a "new rule" that should not be applied retroactively.

As an initial matter, we question the State's assertion that the standard discussed in *Phornsavanh* constitutes a "new rule."  As we explain in this opinion, *Phornsavanh* does not create a new standard.  Instead, it reaffirms the long-established trial standard for motions based on the weight of the evidence and corrects problematic language from our past decisions that has led some trial courts astray.

Moreover, even if we were to accept the State's assertion that *Phornsavanh* represents a "new rule," we would nevertheless conclude that Whisenhunt is entitled to the benefits of that "new rule" under Alaska's retroactivity jurisprudence.

*Why we question the State's assertion that the new trial standard discussed
in* Phornsavanh *constitutes "a new rule"*

Alaska Criminal Rule 33 authorizes a trial judge to grant a new trial "in the interest of justice" if the judge finds that a jury verdict is contrary to the clear weight of the evidence.  The authority of a trial judge to grant a new trial based on the weight of

---

[1]  *Whisenhunt v. State*, 2021 WL 5108493 (Alaska App. Nov. 3, 2021) (unpublished).

[2]  *Id.* at \*6 (citing *Phornsavanh v. State*, 481 P.3d 1145, 1157-61 (Alaska App. 2021)).

the evidence existed at common law and has deep historical roots.[3]  This authority is grounded in a trial court's duty to ensure that a miscarriage of justice does not occur.  As one leading treatise explains, "[F]ar from being a denigration or a usurpation of jury trial, [the judge's authority to set aside the verdict] has long been regarded as an integral part of trial by jury as we know it."[4]  A trial judge "does not sit to approve miscarriages of justice,"[5] and the authority to grant a new trial based on the weight of the evidence "may be the only safeguard available against a miscarriage of justice by the jury."[6]

In *Amidon v. State*, the Alaska Supreme Court contrasted the approach a trial judge must take in considering a motion for a new trial based on the weight of the evidence with the approach the trial judge must take in passing upon a motion for judgment of acquittal:

---

[3]  *See* 3 William Blackstone, *Commentaries on the Laws of England* 387 (1978) ("[I]f it appears by the judge's report, certified to the court, that the jury have brought in a verdict without or contrary to evidence, so that he is reasonably dissatisfied therewith; or if they have given exorbitant damages; or if the judge himself has misdirected the jury, so that they found an unjustifiable verdict; for these, and other reasons of the like kind, it is the practice of the court to award a new, or second, trial.").

[4]  11 Mary Kay Kane et al., *Wright & Miller Federal Practice & Procedure:  Civil* § 2806, at 91 (3d ed. 2012); *see also Smith v. Times Pub. Co.*, 36 A. 296, 309 (Pa. 1897) (Williams, J., concurring) ("[Jurors] are not, and have never been, independent of the court of which they are a part, but their verdicts must meet the approval, or at least they must not offend the sense of justice, of the presiding judge, who, as the late Justice Grier, of the supreme court of the United States, was fond of saying, was by virtue of his position 'the thirteenth juror.'").

[5]  11 Mary Kay Kane et al., *Wright & Miller Federal Practice & Procedure:  Civil* § 2806, at 91 (3d ed. 2012).

[6]  6 Wayne R. LaFave et al., *Criminal Procedure* § 24.6(d) (4th ed. 2015) (2020-2021 Pocket Part, at 100) (citing *State v. Ellis*, 453 S.W.3d 889 (Tenn. 2015)).

> Unlike its function in passing upon a motion for judgment of acquittal, the trial court, in deciding a motion for new trial on the ground that the verdict is contrary to the weight of the evidence, may weigh the evidence and determine the credibility of witnesses.[7]

Thus, as has previously been recognized in our caselaw, in deciding whether to grant a new trial based on the weight of the evidence, the trial judge essentially sits as a "thirteenth juror" — taking an independent and "personal" view of the evidence.[8]

However, as our caselaw has also recognized, the "thirteenth juror" analogy is slightly inapt because it suggests that the trial judge can grant a motion for new trial simply because they disagree with the jury's guilty verdict and because they would have personally voted to acquit if they had been on the jury.[9]  As is clear in our caselaw — including in *Phornsavanh* — that is not the appropriate standard.  A motion for a new trial based on the weight of the evidence should only be granted by a trial court if, in the trial judge's independent evaluation, allowing the jury's verdict to stand would constitute a miscarriage of justice.

In other words, the critical question is not whether the trial court merely disagrees with the jury's verdict; rather, it is whether the trial court believes that the verdict is unjust.[10]  As we have emphasized in numerous cases, including in

---

[7]  *Amidon v. State*, 565 P.2d 1248, 1262 (Alaska 1977).

[8]  *See Dorman v. State*, 622 P.2d 448, 454 (Alaska 1981); *Taylor v. State*, 262 P.3d 232, 233-34 (Alaska App. 2011); *New v. State*, 714 P.2d 378, 381-82 (Alaska App. 1986); *Maloney v. State*, 667 P.2d 1258, 1267-68 (Alaska App. 1983).

[9]  *See Taylor*, 262 P.3d at 233-34.

[10]  *See Hunter v. Philip Morris USA, Inc.*, 364 P.3d 439, 448 (Alaska 2015) ("A trial court should continue to use its discretion to determine whether a verdict is against the weight of the evidence — not merely whether the trial court disagrees with the verdict — and

(continued...)

*Phornsavanh*, a jury's verdict is not to be overturned lightly.[11] A trial court should grant a motion for a new trial only in "exceptional circumstances," such as when there is "a real concern that an innocent person may have been convicted."[12] As the Second Circuit explained, "It is only when it appears that an injustice has been done that there is a need for a new trial 'in the interest of justice.'"[13]

Thus, *Phornsavanh* stands primarily for the well-established principle that a trial court should grant a new trial in cases where the court has independently assessed the evidence and believes that there is a "real concern" that the defendant is innocent.

---

[10]  (...continued)
whether a new trial is necessary in the interest of justice, that is, to prevent injustice." (citations and internal quotation marks omitted)); *Sloan v. Atlantic Richfield Co.*, 541 P.2d 717, 723 n.11 (Alaska 1975).

[11]  *See Phornsavanh v. State*, 481 P.3d 1145, 1158 (Alaska App. 2021) (citing *Hunter*, 364 P.3d at 447-48); *Taylor*, 262 P.3d at 233-34; *see also Dorman*, 622 P.2d at 454; *Amidon*, 565 P.2d at 1261-62.  *See generally* 3 Sarah N. Welling et al., *Wright & Miller Federal Practice & Procedure:  Criminal* § 582, at 443 (4th ed. 2020) ("The power to grant a new trial [based on the weight of the evidence] should be invoked only in exceptional cases, where the evidence weighs heavily against the verdict.").

[12]  *Phornsavanh*, 481 P.3d at 1159 (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)); *see also United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (noting that new criminal trial should be granted "only if [the trial court] believes that there is a serious danger that a miscarriage of justice has occurred — that is, that an innocent person has been convicted" (citations and internal quotation marks omitted)); *United States v. Morales*, 910 F.2d 467, 468 (7th Cir. 1990) (clarifying that "[i]f the complete record, testimonial and physical, leaves a strong doubt as to the defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal, the [trial] judge may be obliged to grant a new trial").

[13]  *Sanchez*, 969 F.2d at 1414 (quoting Fed. R. Crim. P. 33).

Where *Phornsavanh* departs from our former caselaw is in its disapproval of our imprecise use of an appellate standard in various published cases, and the confusion that this lack of precision appears to have generated among some trial judges.

In *Taylor v. State*, we initially described the standard that the trial judge should use in terms similar to the ones described above — that is, the trial judge must independently assess the weight of the evidence without deference to the jury's view and must then determine whether a new trial is required in the "interest of justice" — *i.e.*, to prevent injustice.[14]  But, in explaining the principle that a trial judge should not grant a motion for a new trial based on the weight of the evidence simply because they disagree with a verdict, we inadvertently quoted language that described the *appellate* standard for reviewing a trial judge's denial of a motion for a new trial based on the weight of the evidence rather than the standard that the trial judge should use in the first instance.  We stated:

> As this Court explained in *Howell v. State*, 917 P.2d 1202, 1212 (Alaska App. 1996), a judge should vacate a jury's verdict and grant a new trial under Criminal Rule 33 only when the evidence supporting that verdict "[is] so slight and unconvincing as to make the verdict plainly unreasonable and unjust."  Beyond the fact of personal disagreement with the jury's decision, the judge must further conclude that the evidence is so one-sided that the jury's contrary view of the case is "plainly unreasonable and unjust."[15]

---

[14]  *Taylor*, 262 P.3d at 233-34.

[15]  *Id.* at 234.

But, as the supreme court later pointed out in *Hunter v. Philip Morris USA, Inc.*, the standard cited in *Howell* was the *appellate* standard, not the trial court standard.[16]  The actual quote from *Howell* reads:

> *[I]n reviewing a trial court's exercise of discretion upon a motion for new trial*, [this Court] must examine the record and determine whether "the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust." If [this Court] find[s] that "there was an evidentiary basis for the jury's decision," then the denial of a new trial must be affirmed.[17]

We partially recognized our mistake in *White v. State*, where we vacated the trial judge's new trial order and remanded for reconsideration of the motion for a new trial based on the weight of the evidence because the court had incorrectly used the appellate standard of "any conceivable evidentiary basis" when deciding the motion.[18] In *White* — as in *Phornsavanh* — we acknowledged that our past decisions had not been entirely clear.  As we explained in *White*:

> We concede that the language, "[any] evidentiary basis for the jury's decision," is repeatedly cited in Alaska appellate decisions.  But it is not cited as the proper standard for a trial judge to employ when deciding whether to grant a new trial. Rather, this formulation is the standard that an *appellate* court employs when a litigant challenges a trial judge's *denial* of a

---

[16]   *Hunter*, 364 P.3d at 448-49.

[17]   *Howell v. State*, 917 P.2d 1202, 1212 (Alaska App. 1996) (emphasis added) (citations omitted) (quoting *Amidon v. State*, 565 P.2d 1248, 1262 n.44 (Alaska 1977)).

[18]   *White v. State*, 298 P.3d 884, 885-86 (Alaska App. 2013).

request for a new trial (on the ground that the jury's verdict is against the weight of the evidence).[19]

However, although we recognized the problem with the "any evidentiary basis" appellate standard in *White*, we failed to recognize that the other part of the formulation — "that the jury's contrary view of the case is plainly unreasonable and unjust" — could also lead to confusion and possible error.[20]

We finally recognized the potential problem of trial judges using the "plainly unreasonable and unjust" language after the supreme court brought our attention to the matter in *Hunter*.[21] In *Hunter*, a civil case, the trial court seized on the "plainly unreasonable" language and focused its analysis on whether the jury's verdict was "reasonable" — *i.e.*, whether any reasonable juror could have reached that outcome — rather than focusing on whether it was "unjust."[22] As the supreme court pointed out, the motion for a new trial required the judge to take a "personal" view of the evidence and determine whether a new trial was required "in the interest of justice."[23] Analyzing the question in terms of what "reasonable" jurors could decide did not fulfill that

---

[19] *Id.* at 886 (emphasis in original).

[20] *See id.* at 885 (quoting *Taylor*, 262 P.3d at 234).

[21] *Hunter*, 364 P.3d at 444-47.

[22] *Id.*

[23] *Id.* at 449, 452 (quoting *Kava v. American Honda Motor Co., Inc.*, 48 P.3d 1170, 1176-77 (Alaska 2002)).

obligation.[24]  The court therefore vacated the order and remanded the case for reconsideration of the new trial motion under the appropriate standard.[25]

The same misuse of the "plainly unreasonable and unjust" language occurred in *Phornsavanh*.  There, the trial judge resolved the defendant's motion for a new trial based on the weight of the evidence by referring to what reasonable jurors could find.[26]  The judge noted in a footnote that, if the trial had been a bench trial, he might not have found that the State had proved its case beyond a reasonable doubt.[27]  But he did not explain what he meant by that footnote.  And, at sentencing, the judge was adamant that he "want[ed] to make it clear that [his] personal opinion has never been expressed and will not be."[28]

Because the trial judge's comments suggested that he may have failed to independently determine whether the jury's verdict was unjust, we remanded Phornsavanh's case for reconsideration of the motion for a new trial.[29]  In doing so, we disavowed our incorrect use of the appellate standard in *Taylor* because it appeared that the language used in *Taylor* and other cases was misleading some trial judges into believing that the primary question with regard to a motion for a new trial based on the

---

[24]  *Id.* at 451.

[25]  *Id.* at 454.

[26]  *Phornsavanh v. State*, 481 P.3d 1145, 1158-59 (Alaska App. 2021).

[27]  *Id.* at 1159.

[28]  *Id.*

[29]  *Id.* at 1161.

weight of the evidence was not whether the trial judge believed that the verdict was "unjust" but instead whether the verdict was "unreasonable."[30]

The trial judge's order in *Whisenhunt* raises some of the same concerns that existed in *Phornsavanh* and *Hunter*. The trial judge's resolution of the motion for a new trial based on the weight of the evidence states:

> In its preparation, the court has reviewed the exhibits, its notes of testimony, and relistened to a considerable amount of testimony. The issue for the court is whether the State proved its case beyond a reasonable doubt. The court's assessment is that the evidence was insufficient to prove the case beyond a reasonable doubt. But the court cannot conclude that the evidence is so one-sided that the jury's contrary view of the case is plainly unreasonable and unjust. The most compelling evidence is Whisenhunt's semen on Kempski's belt and under her fingernails and that he denied knowing Kempski multiple times which is obviously not true. The defense attempted to explain this by arguing that during the about 15 minute period at the Holiday station Whisenhunt traded drugs for fellatio. The jury reasonably rejected this explanation.

As we stated in our unpublished memorandum, this resolution raises questions as to whether the trial court "actually exercised its discretion and made an independent finding about 'the interest of justice.'"[31] As we explained,

> It is possible that the trial court found that the jury's verdict was not unjust, even though the trial court personally disagreed with it. But it is also possible that the trial court simply deferred to the jury's verdict because an evidentiary

---

[30]   *Id.* at 1159-60.

[31]   *Whisenhunt v. State*, 2021 WL 5108493, at \*7 (Alaska App. Nov. 3, 2021) (unpublished) (quoting *Phornsavanh*, 481 P.3d at 1157-59).

basis for that verdict existed. We therefore conclude that a remand for clarification is required.[32]

When we remanded the case, we stated that we were doing so "in light of the standard set out in *Phornsavanh*."[33] Given this language, we can see why the State believed that the *Phornsavanh* standard constituted a "new rule." But, as we have just explained, the *Phornsavanh* standard is essentially the same discretionary trial court standard that has always governed motions for new trial based on the weight of the evidence under Alaska law. The only difference is that the potentially misleading language from *Taylor* and its progeny has been disavowed so that there is no confusion about the trial court's duty to independently weigh the evidence and determine if a new trial is needed to prevent a miscarriage of justice.

We acknowledge that whether the standard set out in *Phornsavanh* constitutes a "new rule" for retroactivity purposes is not entirely free from doubt. As this Court explained in *Garhart v. State*, "To determine what counts as a new rule, . . . courts [must] ask whether the rule . . . can be meaningfully distinguished from [the rules] established by *binding precedent* at the time [the defendant's] state court conviction became final."[34] We then went on to state, "[If] the outcome [was] susceptible [of] debate among reasonable minds . . . , [the rule should be viewed as] a 'new rule.'"[35]

Here, several factors undermine the *Phornsavanh* standard's qualification as a new rule. Much of the standard reiterates long-held aspects of the law on evaluating

---

[32]    *Id.* at *7.

[33]    *Id.*

[34]    *Garhart v. State*, 147 P.3d 746, 748 (Alaska App. 2006) (alterations and emphasis in original) (quoting *Wright v. West*, 505 U.S. 277, 304 (1992) (O'Connor, J., concurring)).

[35]    *Id.* at 748 (alterations in original) (quoting *Butler v. McKellar*, 494 U.S. 407, 415 (1990)).

new trial motions: the trial judge sitting as a metaphorical "thirteenth juror," the court's independent weighing of the evidence,[36] and the power of these motions to prevent a miscarriage of justice (such as that occurs when an innocent person is convicted).[37] Likewise, we previously recognized in *White v. State* that statements in prior cases accepting "any evidentiary basis" for the verdict inappropriately applied an appellate review standard to the initial evaluation of a new trial motion.[38] All of these aspects of *Phornsavanh* were controlled by precedent that was binding at the time Whisenhunt's new trial motion was decided.

On the other hand, *Phornsavanh* did require us to disavow four of our own recent and contrary precedents.[39] When a court overrules binding case law, that is a strong indication that it is establishing a new rule, even if the result is a reversion to a standard that applied prior to the overruled decision.[40] Nevertheless, there is a fine line between outright overruling of prior precedent and simple clarification of the law. As

---

[36] *See, e.g.*, *Dorman v. State*, 622 P.2d 448, 454 (Alaska 1981); *New v. State*, 714 P.2d 378, 381-82 (Alaska App. 1986); *Maloney v. State*, 667 P.2d 1258, 1267-68 (Alaska App. 1983).

[37] *See Amidon v. State*, 565 P.2d 1248, 1261-62 (Alaska 1977); *see also* Alaska R. Crim. P. 33; *Hunter v. Philip Morris USA, Inc.*, 364 P.3d 439, 448 (Alaska 2015); *Salinas v. State*, 373 P.2d 512, 515 n.15 (Alaska 1962); *Anderson v. State*, 438 P.2d 228, 233 n.16 (Alaska 1968).

[38] *White v. State*, 298 P.3d 884, 885-86 (Alaska App. 2013).

[39] *Phornsavanh v. State*, 481 P.3d 1145, 1160, 1160 n.45 (abrogating *Taylor v. State*, 262 P.3d 232, 234 (Alaska App. 2011); *White*, 298 P.3d at 885-86; *Coleman v. State*, 407 P.3d 502, 512 (Alaska App. 2017); *Adams v. State*, 440 P.3d 337, 341 (Alaska App. 2019)).

[40] *See, e.g.*, *Whorton v. Bockting*, 549 U.S. 406, 415-17 (2007) (holding that the rule established in *Crawford v. Washington*, 541 U.S. 36 (2004) was a "new rule" for retroactivity purposes, even though it simply returned Confrontation Clause standards back to that which had prevailed prior to *Ohio v. Roberts*, 448 U.S. 56 (1980)).

one state's highest court noted, in untangling and clarifying its prior precedents on an issue, the fact "that 'some trial courts and members of the bar seemingly have [mis]construed' a prior case does not mean that a later decision, setting forth a proper interpretation, 'comprise[s] a departure from the law applicable to criminal causes.'"[41] Our decision in *Phornsavanh* lies more in this vein.

Further support for the conclusion that the trial standard discussed in *Phornsavanh* does not constitute a "new rule" is that we could easily rewrite the *Whisenhunt* decision without directly referring to *Phornsavanh*. The problem with the court's statements in *Whisenhunt* is that they are ambiguous as to why the court denied the motion for a new trial. The trial judge stated that, in his personal assessment, the evidence was "insufficient." But "insufficient" is a confusing term to use in the context of a motion for a new trial. Presumably, the judge did not mean legally insufficient as he had just (properly) denied the defendant's motion for judgment of acquittal. It is possible the judge used "insufficient" to signal his view that, although he would have personally voted to acquit, he did not have strong doubts as to Whisenhunt's guilt or the justness of the verdict. But the trial judge did not clearly say that. As a general matter, it is rare for a trial judge to express such strong disagreement with a jury's guilty verdict. Our remand for clarification is primarily to ensure that the trial judge believed not only that the jury's verdict was not "unreasonable," but also that it was not "unjust."

---

[41] *State v. Daughtry*, 18 A.3d 60, 87 (Md. App. 2011) (alterations in original) (quoting *Walker v. State*, 684 A.2d 429, 434 (Md. App. 1996)).

*Why we conclude that the retroactivity test would be met if <u>Phornsavanh</u> did constitute a "new rule"*

In any event, even assuming that *Phornsavanh* does represent a new rule, we would nevertheless conclude that this new rule is retroactive, at least with regards to cases on direct review like *Whisenhunt*.

In its petition for rehearing, the State relies on the *Judd* retroactivity test. But it is not clear that *Judd* necessarily applies. In *Charles v. State*, the supreme court adopted the direct review retroactivity standard in *Griffith v. Kentucky*, holding that a new constitutional rule automatically applies retroactively to defendants whose convictions were not final at the time the new rule was announced.[42] (A case is considered final for purposes of retroactivity "when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."[43])

We acknowledge that *Charles* involved a new *constitutional* rule, and the "new rule" in *Phornsavanh* (if it is recognized as such) does not involve a constitutional rule. But the reasoning behind *Charles* and *Griffith* — which is grounded in due process and equal protection and the belief that similarly situated defendants should be treated similarly — applies equally to new non-constitutional rules as it does to constitutional rules. Indeed, a number of federal circuits have expanded *Griffith* to provide for retroactive application of new non-constitutional rules to cases on direct review.[44]

---

[42] *Charles v. State*, 326 P.3d 978, 982-85 (Alaska 2014) (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987)).

[43] *Id.* (internal quotation marks omitted) (quoting *Griffith*, 479 U.S. at 321 n.6).

[44] *See United States v. Mauldin*, 109 F.3d 1159, 1161 (6th Cir. 1997) (applying federal statutory interpretation ruling retroactively to defendant's case, which was on direct appeal); *United States v. Rivas*, 85 F.3d 193, 195, 195 n.1 (5th Cir. 1996) (same); *United States v.*

(continued...)

We have not yet had occasion to decide this issue, but it seems at least possible that we would expand *Charles* in a similar manner. If we did so, Whisenhunt would receive the benefit of *Phornsavanh* because his case remains on direct review.

In any event, we need not decide this issue here, because we conclude that *Phornsavanh*'s "new rule" (assuming it can be characterized as such) would also meet the general retroactivity test set out in *Judd v. State*.[45] This three-factor test requires the court to evaluate: "(a) the purpose to be served by the new standards; (b) the extent of the reliance by law enforcement authorities on the old standards; and (c) the effect on the administration of justice of a retroactive application of the new standards."[46]

Here, the purpose to be served by the "new standard" is to ensure that trial judges understand that they have the discretion to vacate the jury's guilty verdict and order a new trial in those exceptionally rare cases where, after an independent evaluation of the evidence, the trial judge has a "real concern" that the defendant is innocent. In other words, the purpose is to ensure that trial judges are aware of their authority under Criminal Rule 33 and their responsibility to justice. In *Rutherford v. State*, the supreme court recognized that "[w]here the purpose of the new rule is primarily related to the integrity of the verdict, the application thereof has generally been extended to all

---

[44]  (...continued)
*Jones*, 24 F.3d 1177, 1179 (9th Cir. 1994) (citing *Griffith* to apply new *Daubert* test retroactively to case on direct appeal); *United States v. Lopez-Pena*, 912 F.2d 1542, 1545 (1st Cir. 1989) (citing *Griffith* to apply statutory interpretation retroactively to cases on direct appeal). The First Circuit stated, in response to the government's argument that *Griffith* applied solely to constitutional rules of procedure, that "[w]e cannot think, however, that criminal defendants whose cases are still pending on direct appeal should be any less entitled to claim the protection of important substantive statutes than of rights found in the Constitution." *Lopez-Pena*, 912 F.2d at 1545.

[45]  *Judd v. State*, 482 P.2d 273 (Alaska 1971).

[46]  *Id.* at 278.

cases."[47] The supreme court has reiterated that point on multiple occasions, making clear that the retroactivity analysis is largely determined by the first *Judd* factor in such situations.[48]   The first *Judd* factor thus largely compels retroactive application of *Phornsavanh*.

Moreover, even if the first *Judd* factor did not control, the remaining two *Judd* factors do not militate against retroactive application of *Phornsavanh*. If the State is arguing that police and prosecutors have a reliance interest in trial judges abdicating their responsibility under Criminal Rule 33 to independently determine whether a verdict is unjust, we conclude that this is "not the type of reliance we want to encourage as a matter of policy."[49]

We are also skeptical that retroactive application of *Phornsavanh* will have an undue impact on the administration of justice.  The number of criminal defendants who file new trial motions based on the weight of the evidence is a small fraction of those found guilty of criminal offenses, and it is even rarer for a trial judge to express serious doubts about a jury's verdict.  In the vast majority of cases, therefore, we can be confident that any misuse of the appellate standard by the trial judge was harmless.  It is only in those extremely rare cases, such as *Phornsavanh* and the current case, where the trial judge has affirmatively expressed significant concern about the fairness of the verdict but has potentially resolved those concerns solely based on the fact that the jury's verdict is not "plainly unreasonable," that a remand for clarification or reconsideration may be necessary.

---

[47]   *Rutherford v. State*, 486 P.2d 946, 952 (Alaska 1971).

[48]   *See, e.g.*, *State v. Smart*, 202 P.3d 1130, 1141 (Alaska 2009); *Farleigh v. Anchorage*, 728 P.2d 637, 639-41 (Alaska 1986).

[49]   *State v. Semancik*, 99 P.3d 538, 543 (Alaska 2004).

We recognize that such a remand may be complicated in cases where the trial judge has since retired. But, in most instances, a retired judge can be brought back to sit *pro tem*, as occurred in *Phornsavanh*. We likewise hope that the same can occur in this case.

*Conclusion*

Based on the reasoning outlined above, we GRANT the State's petition for rehearing, but we DENY the State's claims on rehearing. We therefore AFFIRM our original decision to remand this case to the trial court for reconsideration and/or clarification of the trial court's ruling on Whisenhunt's motion for a new trial based on the weight of the evidence.