**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Darlina K. FRANCE,
Defendant–Appellant.**

**No. 87–1282.**

United States Court of Appeals,
Ninth Circuit.

Argued Nov. 10, 1988.

Submitted July 7, 1989.

Decided Sept. 13, 1989.

See also, 666 F.Supp. 1421.

---

Michael R. Levine, Federal Public Defender, Honolulu, Hawaii, for defendant-appellant.

Mark J. Bennett, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before NELSON, REINHARDT and WIGGINS, Circuit Judges.

REINHARDT, Circuit Judge:

Darlina France shot her husband after an argument. The event appears to have been merely the most violent moment in a relationship that had for some time been less than idyllic. Since the shooting occurred on the military base where the couple lived, it fell within the "special territorial jurisdiction" of the United States, *see* 18 U.S.C. § 113, and made France liable for a federal offense. The Government charged her with assault with intent to murder, assault resulting in serious bodily injury, 18 U.S.C. § 113(a), (f), and using a firearm in the commission of a felony, 18 U.S.C. § 924(c). She was found guilty on two assault-related charges and on the weapons count. The conviction under § 924(c) carried with it a five-year mandatory prison term, without the possibility of probation or parole.

Because of the circumstances surrounding the offense, events in the district court, and concerns about the constitutionality of § 924(c) as applied to France, we ordered supplemental briefing in this case after argument. In the interim, the Supreme Court decided *Gomez v. United States,* —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), holding that it is reversible error for federal magistrates to conduct jury selection in felony trials. A magistrate conducted the voir dire in France's trial. We conclude that France's case falls within the *Gomez* rule, and we reverse her conviction. We address the broader concerns which we have had about this case only in passing at the end of our discussion.

I

The Government and France offer starkly disparate pictures of the events which led up to the shooting. The Government emphasizes that France had apparently been involved in violent incidents with her two previous husbands and that she was angered when, the day before the shooting, her husband had knocked over their Christmas tree and, on the day of the shooting, had taken a beer from her. At trial, France described the situation somewhat differently. She recounted a history of physical abuse at the hands of a previous husband and described how, in the midst of an argument and just prior to the shooting, her current husband had attacked her.

The parties stress different facts concerning the actual shooting as well. The Government makes much of the fact that Mr. France was about 20 feet from his wife when he was shot, while France highlights the fact that her husband had turned around and was beginning to walk toward her once more when she fired. Whatever the case, France shot her husband in the shoulder with a gun he had bought for her some months before. She then went to her husband and told one of her two daughters to call an ambulance. At this point, France appears to have made several contradictory statements, repeating to law enforcement

officers that she had not meant to shoot her husband, while also stating that "he [her husband] took my beer and that was the last straw."

At trial, Mr. France testified that he believed the shooting to have been accidental, given the gun's light trigger pull. He also testified that he and his wife had reconciled, that they loved each other and that he had asked that she not be prosecuted. The Government refused to accede to this request and chose to prosecute France under § 924(c), which carries a mandatory five-year prison sentence without possibility of probation or parole, as well on the two felony assault counts. Jury selection was conducted by a federal magistrate, without objection from France. The jury convicted France of assault with a deadly weapon, a lesser included offense of assault with intent to commit murder under 18 U.S.C. § 113(a), assault resulting in serious bodily injury under 18 U.S.C. § 113(f), and using a firearm in relation to a crime of violence under 18 U.S.C. § 924(c).

Then followed a most enlightening sentencing hearing. Judge Kelleher, expressing understandable hostility to his obligation to impose a five-year, no-probation, no-parole sentence on France, criticized the statute's relegation of the sentencing judge to an individual who gives only a *"pro forma* performance." He continued by stating that he "might as well go fishing on the day of the sentence and ask the clerk to pronounce sentence." He explicitly told France that he felt her case did not warrant a sentence of five years in prison without the possibility of parole. He then imposed the sentence required by § 924(c), sentencing France to concurrent three-year terms of probation for her two convictions under § 113.

France appealed. We ordered supplemental briefing on issues concerning the constitutionality of § 924(c), and allowed the National Association of Criminal Defense Lawyers to file an *amicus curiae* brief on France's behalf. Meanwhile, the Supreme Court decided *Gomez.* We then granted the motion of France's attorney, a public defender, to file a supplemental brief

concerning *Gomez,* and ordered the government to respond. As we conclude that the decision in *Gomez* requires us to reverse France's conviction, we do not reach the constitutional issues ably briefed by the parties.

## II

### A. *Gomez*

In *Gomez,* the Supreme Court examined whether a provision of the Federal Magistrates Act ("Act") which allows magistrates to perform "such additional duties as are not inconsistent with the Constitution and laws of the United States," 28 U.S.C. § 636(b)(3), empowers magistrates to conduct jury selection in felony trials. 109 S.Ct. at 2239. The Court noted that Gomez and the other petitioners had initially objected to having a magistrate conduct voir dire and jury selection, but had never demonstrated or claimed that they were prejudiced by the magistrate's action. *Id.* After examining the structure and history of the Act, the *Gomez* court concluded that jury selection was not within the " 'range of duties' that Congress intended magistrates to perform." *Id.* at 2242 (quoting *Mathews v. Weber,* 423 U.S. 261, 270, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976)).

The Court emphasized three factors in reaching its result. First, it noted that Congress had specifically authorized magistrates "to conduct trials of civil matters and of minor criminal cases" and determined that this "carefully defined grant of authority" "should be construed as an implicit withholding of the authority to preside at a felony trial." 109 S.Ct. at 2245. Second, it examined in detail the role that jury selection occupies in a criminal trial, observing that it represented a "critical stage of the criminal proceeding," with voir dire the "primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice." *Id.* at 2246 (citing *Lewis v. United States,* 146 U.S. 370, 374, 13 S.Ct. 136, 137–38, 36 L.Ed. 1011 (1892), and *Rosales–Lopez v. United States,* 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981)). Finally, the Court discussed the

degree to which the individual who conducts voir dire must make sensitive evaluations of "not only spoken words but also [the] gestures and attitudes of all participants to ensure the jury's impartiality," and expressed "serious doubts that a district judge could review the[ese] function[s] meaningfully." 109 S.Ct. at 2247. Based on these observations, the court concluded that Congress had not given magistrates the power to conduct jury selection in a felony trial.

The Court, in the final portion of its opinion, stated clearly that "a defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside," *id.* at 2248, placed the error in *Gomez* in the category of errors that " ' "can never be treated as harmless." ' " *Id.* (quoting *Gray v. Mississippi*, 481 U.S. 648, 668, 107 S.Ct. 2045, 2056, 95 L.Ed.2d 622 (1987) (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967))). It thus ended its opinion by ruling that *Gomez* error was not susceptible to harmless error analysis. 109 S.Ct. at 2248.

Having described the rationale and holding of *Gomez*, we turn now to the task of applying it to France's case.

## B. Application of *Gomez*

■ When we ordered the government to respond to the *Gomez* brief filed by France's public defender, we specifically mandated that the government address issues of retroactivity and waiver.[1] We have reviewed the government's arguments and conclude (1) that *Gomez* must be applied (at least) to all convictions not yet final, and (2) that the fact that France did not object to the magistrate conducting jury selection does not serve to waive her right to a reversal under *Gomez*.

### (1)

The Supreme Court has made clear that "as a rule, judicial decisions apply 'retroactively.' " *Solem v. Stumes*, 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984) ("*Stumes*") (quoting and citing *Robinson v. Neil*, 409 U.S. 505, 507–08, 93 S.Ct. 876, 877, 35 L.Ed.2d 29 (1973)). Retroactivity is "most appropriate" in those cases where a new rule "is designed to enhance the accuracy of criminal trial." *Stumes*, 465 U.S. at 643, 104 S.Ct. at 1342 (new constitutional rule); *see . also Williams v. United States*, 401 U.S. 646, 653 & n. 6, 91 S.Ct. 1148, 1152 & n. 6, 28 L.Ed.2d 388 (1971) (plurality opinion). Although the Court has usually discussed retroactivity in the context of new constitutional rules, we believe that the analysis of *Stumes* and *Williams* applies to *Gomez* as well. The Supreme Court, although its decision was, in the end, one of statutory construction, made clear that its holding was compelled by the notion that any other result might well run afoul of the Constitution by authorizing the deprivation of one of the "basic rights" of a criminal defendant. *See Gomez*, 109 S.Ct. at 2241, 2246–48. Moreover, the *Gomez* court's explicit discussion of the potential for incurable error in jury selection should magistrates select a jury in a felony trial over which a district judge would ultimately preside, *id.* at 2247, demonstrates that its decision was grounded in notions of trial "accuracy," making the *Gomez* rule precisely the sort of holding "most appropriate" for retroactive application. *Stumes*, 465 U.S. at 643, 104 S.Ct. at 1341.

---

**1.** The government in its brief advanced the view that the fact that district judges in Hawaii are "readily available" to review the behavior of magistrates during voir dire distinguishes France's case from the situation in *Gomez*. We reject this argument on two grounds. First, the Supreme Court's careful description of the role of the judge in conducting voir dire, *supra*, does not invite the sort of distinction between "ready" and "less than ready" availability that the government seeks to draw. Either the judge is there conducting voir dire or he is not; if he

is not there—no matter how close to the courtroom he may be or how soon he is consulted—the potential for "meaningful review" has been lost. *See Gomez*, 109 S.Ct. at 2247. Second, the Supreme Court explicitly ruled that magistrates lack the *power* to conduct voir dire in a felony trial. Thus, in every case in which a magistrate conducts voir dire the defendant is deprived of (in this case) her "basic" right "to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside." *Id.* at 2248.

Finally, we note that the question resolved in *Gomez* had never previously been addressed by the Supreme Court. Indeed, the Court explictly noted the conflict among the courts of appeals on the question, citing two of our own cases (which it ultimately overruled, *infra*) as examples of the view it rejected. 109 S.Ct. at 2240 & n. 7. The *Gomez* result thus represents a newly announced rule concerning the conduct of felony trials. As such, it is a rule which must be applied retroactively. In the words of the Supreme Court in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) (*"Griffith"*):

> [A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final, with no exception for cases in which the rule constitutes a "clear break" with the past.

■ Accordingly, we conclude that the rule announced in *Gomez v. United States* must be applied "to all cases pending on direct review or not yet final" on July 7, 1989, the date on which the mandate in *Gomez* issued. "Final" in this context refers to "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith*, 107 S.Ct. 712 n. 6.[2]

### (2)

■ We next turn to the question whether France waived her right to reversal under *Gomez* by not raising an objection to having the magistrate select the jury for her trial. The government relies on two aspects of *Gomez* to support the view that we should find waiver here. It first notes that the Court stated (in its recitation of the facts) that the petitioners in *Gomez* did object when magistrates selected their juries. 109 S.Ct. at 2239. Second, the government quotes a snippet of the concluding sentence in *Gomez* where the Court stated that harmless error analysis would

not apply in a case "in which, despite the defendant's objection ... [a magistrate] exceeds his jurisdiction by selecting a jury." *Id.* at 2248. The government suggests that these observations are sufficient to demonstrate that contemporaneous objection is required to preserve one's right to challenge the magistrate's conduct of voir dire at some later point. We do not find the government's argument persuasive.

Looking first to the *Gomez* decision itself, we find absolutely no indication in the tenor or the text of the opinion to suggest that the Court relied on, or did more than note—in the interest of providing a full and accurate description of the facts before it—the fact the petitioners had objected to the magistrate's conducting voir dire. The snippet recited above merely recapitulates the facts of the case as a descriptive matter. We do not think that the passage can reasonably be read to suggest that the Court intended to limit the broad, definitive rule it announced to the precise facts before it.

We have a far more tangible reason for our holding, however. As the *Gomez* court itself noted, our court had previously ruled in two cases that it was not error for magistrates to conduct voir dire in felony trials. 109 S.Ct. 2240 n. 7 (citing *United States v. Peacock*, 761 F.2d 1313 (9th Cir.), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985); *United States v. Bezold*, 760 F.2d 999 (9th Cir.1985), *cert. denied*, 474 U.S. 1063, 106 S.Ct. 811, 88 L.Ed.2d 786 (1986)). Thus the uniform, settled rule applicable to France at the time of her trial was that the magistrate was empowered to select her jury. As *Gomez* now informs us, our view was erroneous. The only question, therefore, is whether France should be penalized for abiding by the controlling law at the time.

We have held in two decisions *en banc* that a party does not waive its right to challenge a jury instruction if it fails to register a contemporaneous objection—

---

**2.** As we are not called upon to decide it in this case, we leave open the question whether the *Gomez* decision should be afforded "complete" retroactive effect and applied to convictions pending on collateral review. *See Teague v. Lane,* —— U.S. ——, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

even when contemporaneous objection is required by procedural rule—if there is a "solid wall of circuit authority" which would have prevented the district court from correcting the alleged error. *Guam v. Yang,* 850 F.2d 507, 512 n. 8 (9th Cir. 1988) (en banc) (*"Yang II"*); *United States v. Scott,* 425 F.2d 55, 57–58 (9th Cir.1970) (en banc) (Fed.R.Crim.P. 30) (*"Scott"*). The justifications for this rule are simple. Objecting in the trial court to a clearly defined rule of the circuit is futile, inasmuch as the trial court cannot overrule authority binding on it. Furthermore, requiring parties to object to aspects of the trial that have already been approved by the court of appeals would work the " 'unhappy result' " of " 'encourag[ing] defense counsel to burden district courts with repeated assaults on then settled principles out of hope that those principles will be later overturned.' " *Yang II,* 850 F.2d at 512 n. 8 (quoting *Scott,* 425 F.2d at 57–58).

Even though the issue before us does not involve a failure to object to a jury instruction, we believe, contrary to the government's argument, that the rule of *Yang II* and *Scott* is not limited to the narrow facts of those cases and is applicable to France's case. We note first that the justifications for the rule in our earlier *en banc* cases apply with at least equal force here. Second, and equally important, the rule announced in *Gomez* is one that touches on one of the most "basic rights" of the accused, the right to a fair and accurate trial. As we implied when we framed the question, *supra* at 227, it seems to us at best unseemly, and at worst irresponsible, to penalize France for following the law as it existed at the time her jury was selected. Finally, it is incongruous to hold that a rule that is "designed to enhance the accuracy of a criminal trial," *Stumes,* 465 U.S. at 643, 104 S.Ct. at 1342, and which must, therefore, be given broad retroactive application, can be waived because a defendant did not guess that the law would change some time after the error was committed.

We conclude in this case that France was presented with a "solid wall of circuit authority" and that an exception similar to that recognized in *Yang II* and *Scott* is

applicable. *Peacock* and *Bezold* had already decided, erroneously, that magistrates could conduct voir dire in felony trials. Any objection to the magistrate performing voir dire in France's case would, therefore, clearly have been futile. We therefore hold that France did not waive her right to object, once the Supreme Court's decision in *Gomez* had been rendered, to having a magistrate select her jury.

III

Since we have concluded that the *per se* rule of reversal announced in *Gomez* applies to all cases not final when *Gomez* was decided and that France has not waived her ability to avail herself of that rule, we reverse her conviction. We offer only two final observations. The first concerns the government's decision to prosecute France under § 924(c). While we understand that courts must give the Executive extremely wide latitude in choosing the statutes under which it seeks to indict and prosecute offenders, we, as the district judge apparently was, have been left with the sense that Darlina France may not be the sort of hardened, violent offender whom Congress had in mind when it enacted the Comprehensive Crime Control Act of 1984, of which § 924 was a part. *See* S.Rep. No. 98–225, 98th Cong., 2d Sess. 312–13, *reprinted in* 1984 U.S.Code Cong. & Admin. News, 3182, 3490–91. We doubt that the purposes of punishment, even society's interest in retribution against those who violate its norms, are well served by imprisoning France for five years, separating her from her daughters and the husband, her "victim," with whom she has apparently reconciled. *See* W. Shakespeare, *Merchant of Venice,* Act IV, scene 1, at 184 *et seq.*

Finally, we add a word about the public defender who represented France. Throughout these lengthy proceedings, he has represented his client with vigor and diligence. His supplemental brief on the constitutionality of § 924 was both a substantial and an impressive undertaking although, ironically, it turned out to be irrelevant to our disposition of the case. His

*Gomez* brief, which appeared only a few weeks after the decision was handed down, was equally impressive, and was dispositive. In an era when the offices of federal public defenders will likely bear both a greater share of the burden of defending federal defendants and a greater responsibility for securing the rights of the accused, *see Caplin & Drysdale, Chartered v. United States,* — U.S. ——, 109 S.Ct. 2667, 2677, 105 L.Ed.2d 528 at 547, 559 (1989) (dissenting opinion), it seems appropriate to commend exceptional effort in an unusual case. This case was unusual and the public defender's efforts were exceptional. The conviction is

REVERSED