**UNITED STATES of America, Plaintiff/Respondent,**

v.

**James MULLER, Defendant/Petitioner.**

Civ. No. 89–00649.
Crim. No. 85–00558–01.

United States District Court,
D. Hawaii.

March 22, 1990.

Louis A. Bracco, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff/respondent.

James K. Muller, Phoenix, Ariz., pro se.

ORDER DENYING DEFENDANT/PETITIONER'S PETITION TO VACATE JUDGEMENT AND CONVICTION

PENCE, Senior District Judge.

The petitioner, James K. Muller, was convicted on June 25, 1985 of felony murder, second degree murder, kidnapping, assault with intent to commit murder and illegal possession or use of a firearm. He was sentenced by this court on July 30, 1985 to a term of life imprisonment on the count of

felony murder and terms of 25 years, 5 years, 20 years, and 5 years on the other counts respectively. No appeal was taken, and the petitioner is now serving his sentence.

On August 21, 1989, the petitioner filed with this court a petition to vacate judgement and conviction under 28 U.S.C. § 2255. This court now denies the petitioner's motion.

### I. *Factual Background*

As was the practice in this district at the time, the jury which heard the petitioner's case was empaneled by a federal magistrate. There is no evidence that any objection was raised at the time of voir dire to such a practice either on the part of the defendant or his counsel.

Subsequent to the petitioner's conviction and sentencing, the U.S. Supreme Court, in *Gomez v. United States*, —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), held that the unconsented to selection of a jury in a criminal case by a magistrate is conduct which is not authorized by the Magistrates Act. Subsequently, in *United States v. France*, 886 F.2d 223 (9th Cir. 1989), the Ninth Circuit applied the *Gomez* decision to a criminal conviction of an appellant who was convicted by a jury which had been empaneled by a magistrate, holding that *Gomez* applied to all cases not final when the *Gomez* case was decided. As the appellant in the *France* case had lodged an appeal at the time *Gomez* was handed down, her conviction was reversed based on the new law announced under *France*.

The petitioner has now brought this petition to vacate his judgment and conviction based on 28 U.S.C. § 2255. He claims that the new law announced in *Gomez* and *France* requires that his conviction be overturned since the jury which convicted him was empaneled by a magistrate rather than a district court judge. Petitioner contends that the judgment in his case must be set aside based on an alleged denial of his right to a fair trial and the fact that the court which entered the judgment lacked jurisdiction, having commenced the case by a process not in accordance with what has now been adopted as the law.

### II. *Discussion*

As stated above, the petitioner's conviction was final at the time of both the *Gomez* and *France* decisions. Therefore, any vacation of the petitioner's judgment must be based on an allowance of retroactive application of these decisions on collateral review by this court.

In deciding whether to apply the decisions retroactively, there are two issues which this court must deal with. The first is whether the failure of the petitioner or his counsel to raise a timely objection to the voir dire process then in place, or to take an appeal from the decision, constituted an effectual waiver of the petitioner's right to claim benefit from the *Gomez* and *France* decision on his petition for vacating judgment. The second issue is whether this court is required, notwithstanding the petitioner's failure to object, to apply the *Gomez* and *France* decisions retroactively. The court will deal with each of these in turn.

### A. WAIVER

In *United States v. France*, 886 F.2d 223, 227–28 (9th Cir.1989), the Ninth Circuit held that in light of the prevailing settled state of circuit law, the failure to object to magistrate-conducted jury selection did not waive the defendant's right to object on direct appeal. *Id.* at 228. The Circuit Court's reasoning on this point is just as applicable on collateral review. Therefore, petitioner is not precluded by "waiver" from raising his claim under the *Gomez* and *France* decisions.

### B. RETROACTIVITY

*Gomez* is silent as to its retroactivity application. Furthermore, in the *France* case the Circuit Court failed to give explicit guidance on retroactivity, expressly avoiding the issue of whether the *Gomez* decision "should be afforded 'complete' retroactive effect and applied to convictions pending on collateral review." *Id.* at 227 n. 2. However, the *France* case does make reference to *Teague v. Lane*, 492 U.S. ——,

109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) on the issue of retroactivity. In *Teague*, the Court, through Justice O'Connor, held that "[u]nless they fall within an exception to the general rule, new Constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* 109 S.Ct. at 1075 (footnote omitted).

The present petition asks this court to vacate a conviction based on a change in the law applicable to the petitioner's case. If that change constitutes a new rule for purposes of Teague, then this court may not apply it retroactively unless it falls within one of the two exceptions adopted in that case.

In *Teague*, the Supreme Court defined a "new rule" as one which "breaks new ground," "imposes a new obligation on the States or the Federal Government," or which was not *"dictated* by precedent existing at the time the defendant's conviction became final." *Teague, supra,* at 1070 (emphasis in original). Clearly, both the *Gomez* and *France* decisions would fall within these categories, mandating, as they do, new procedures to be followed in jury selection and overturning convictions in cases where those procedures were not followed. It is clear that this is a "new obligation on the ... Federal Government" which was not "dictated by precedent existing at the time the defendant's conviction became final." Therefore, under *Teague*, this court is obligated to refrain from applying the *Gomez* and *France* decisions retroactively to the benefit of the petitioner, unless the rule announced in the *Gomez* case, and adopted by the Ninth Circuit in *France*, falls within one of the two recognized exceptions adopted in *Teague*.

Under the first exception, "a new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Teague, supra,* at 1073 (quoting *Mackey v. United States,* 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971)). This exception is clearly inapplicable to the current petition. The proscribed conduct in this case is felony murder, kidnapping and armed assault. The criminal law-making

authority has had the ability to proscribe such conduct in every civilized society throughout history.

Under the second exception, a new rule may be applied on collateral review "if it requires the observance of 'those procedures that ... are implicit in the concept of ordered liberty.'" *Teague, supra,* 109 S.Ct. at 1073 (quoting *Mackey v. United States,* 401 U.S. at 693, 91 S.Ct. at 1180 (Harlan, J., concurring in judgment in part and dissenting in part) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937) (Cardozo, J.))). Simply applying this language without more, this court might conclude that the *Gomez* and *France* decisions, dealing as they do with the proper impaneling of a jury, announce a new rule which rises to the level of being "implicit in the concept of ordered liberty". Surely the right to a jury itself is a procedural guarantee which would partake of that status. The question thus becomes whether or not the means adopted to implement that right possess equal status. As to this question, *Teague* provides some guidance and warns against the latent danger in relying solely on the famous language of the *Palko* opinion.

> Were we to employ the *Palko* test without out more, we would be doing little more than importing into a very different context the terms of the debate over incorporation.... Reviving the *Palko* test now, in this area of law, would be unnecessarily anachronistic.... [W]e believe that Justice Harlan's concerns about the difficulty in identifying both the existence and the value of accuracy-enhancing procedural rules can be addressed by limiting the scope of the second exception to those new procedures without which the likelihood of an accurate conviction is seriously diminished. Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge.

*Teague, supra,* 109 S.Ct. at 1076-77.

Additionally, in two decisions which were handed down recently, the Supreme Court

has provided further elucidation on the proper application of the exceptions adopted in *Teague.* In *Butler v. McKellar, et al.,* — U.S. ——, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), and *Saffle, et al. v. Parks,* — U.S. ——, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) the Court dealt with the application of the *Teague* exceptions to two separate *habeas corpus* petitions. While the petitioner in the instant case has not brought his request as a *habeas* petition, the analysis of the *Teague* exceptions is applicable.

In the *Saffle* case, Justice Kennedy stated that in analyzing the necessity of applying a new rule retroactively, a court must look to the underlying purpose of the petition which seeks its application (in that case a writ of *habeas corpus*). "Foremost among these is ensuring that ... courts conduct criminal proceedings in accordance with the Constitution as interpreted at the time of the proceeding." *Saffle, supra,* at ——, 110 S.Ct. at 1260. In making sure that criminal defendants were accorded effective due process, a "court need only apply the constitutional standards that prevailed at the time the original proceedings took place." *Id.* (quoting *Teague, supra,* 109 S.Ct. at 1073 (quoting *Desist v. United States,* 394 U.S. 244, 262–263, 89 S.Ct. 1030, 1040–1041, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting))).

In *Butler,* Chief Justice Rehnquist adopted portions of Justice O'Conner's opinion in *Teague* which viewed rules which would satisfy the second exception to the general premise of nonretroactivity as being "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Butler, supra,* — U.S. at ——, 110 S.Ct. at 1218 (quoting *Teague,* 492 U.S. at ——, 109 S.Ct. at 1076–77). If the application of a new rule "would not seriously diminish the likelihood of obtaining an accurate determination," then retroactive application to cases which have already become final would be inappropriate. *Id.*

Applying this analysis to the petition now before it, this court finds that it would be inappropriate to apply either the *Gomez* or *France* decision so as to vacate the petitioner's conviction. While it is true that "jury selection occupies ... a 'critical stage of the criminal proceeding', with voir dire the 'primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice,'" *U.S. v. France,* 886 F.2d 223, 225 (9th Cir.1989) (quoting *Gomez v. United States,* — U.S. ——, 109 S.Ct. 2237, 2246, 104 L.Ed.2d 923 (1989)), it is also true that at the time of the petitioner's trial, the empaneling of a jury by a magistrate constituted "criminal proceedings in accordance with the Constitution as interpreted at the time of the proceeding." *Saffle, et al. v. Parks,* — U.S. ——, ——, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990). Furthermore, there is no indication that such a procedure "seriously diminish[ed] the likelihood of obtaining an accurate determination." *Butler v. McKellar, et al.,* — U.S. ——, ——, 110 S.Ct. 1212, 1218, 108 L.Ed.2d 347 (1990). Therefore, this court concludes that retroactive application of the *Gomez* and *France* decisions would be inappropriate under the Supreme Court's decision in *Teague v. Lane,* 492 U.S. ——, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Consequently, the petitioner's request must be and is therefore DENIED.