**Jaroslav HRUBEC, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**UNITED STATES of America**

v.

**Jaroslav HRUBEC, Defendant.**

**Nos. 89–CV–3038, 84–CR–566.**

United States District Court, E.D. New York.

April 3, 1990.

Jaroslav Hrubec, Long Island City, N.Y., pro se.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Jeffrey Mearns and William Muller, Asst. U.S. Attys., of counsel), for U.S.

## MEMORANDUM–DECISION & ORDER

BARTELS, District Judge.

This is another petition by Jaroslav Hrubec under 28 U.S.C. § 2255 to vacate his conviction and sentence. On March 6, 1985, following a jury trial, defendant Jaroslav Hrubec was convicted of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846 (Count One), importation of cocaine in violation of 21 U.S.C. §§ 952(a) and 960(a)(1) and 18 U.S.C. § 2 (Count Three), and possession of cocaine with intent to distribute in violation

of 21 U.S.C. § 841(a)(1) (Count Four). Hrubec was acquitted on Count Two which charged him with conspiracy to import cocaine in violation of 21 U.S.C. § 963. On April 26, 1985, Hrubec was sentenced to seven years of imprisonment on Count One, and on Counts Three and Four he received a $2,500 fine and seven-year prison terms to be followed by a ten year term of special parole. All three of the seven-year terms of imprisonment were ordered to be served concurrently.

Thereafter, represented by retained counsel, Hrubec took a direct appeal of his conviction to the United States Court of Appeals for the Second Circuit in which he raised three issues. He claimed: the warrant which allowed government agents to enter his home was defective and therefore the evidence obtained pursuant thereto should have been excluded from the trial; the evidence was clearly insufficient to sustain a conviction; and the Government, in summation, abridged Hrubec's Fifth Amendment right not to testify against himself. The Court of Appeals found these contentions to be without merit, and affirmed Hrubec's conviction on October 31, 1989.

Subsequently, on November 7, 1986, Hrubec filed a *pro se* motion seeking the recall of the Court of Appeals's mandate and assignment of counsel to prepare and file a writ of certiorari. The Court of Appeals denied that motion on November 25, 1986, and denied a petition for rehearing on January 23, 1987.

On February 3, 1987, Hrubec filed a petition under 28 U.S.C. § 2255 (Case No. 87–CV–264). In his petition Hrubec claimed that his conviction should be set aside because he was denied effective assistance of counsel on trial and on appeal. He asserted that trial counsel was incompetent for failing 1) to challenge the constitutionality of the search warrant on due process grounds; 2) to advise him that he had a constitutional right to testify; 3) to obtain a Czech interpreter to help him communicate with counsel and fully understand the proceedings and a Czech expert to refute translations offered by the Government; 4)

to challenge the admission of post-arrest statements made prior to the administering of *Miranda* warnings; and 5) to correct errors in his presentence report and suggest sentencing alternatives to incarceration.

Hrubec also alleged that his appellate counsel's performance had been ineffective in that counsel failed a) to raise on appeal the same issues trial counsel neglected to pursue below; b) to present an ineffective assistance of trial counsel claim; c) to move to reduce the sentence; and d) to seek a writ of certiorari.

On August 14, 1987, this Court referred the matter to the Honorable Carol B. Amon, United States Magistrate, for a report and recommendation. Magistrate Amon held a hearing on May 11, 1988, to specifically address two claims raised by Hrubec's petition—i.e., that he did not fully understand the proceedings because of language difficulties, and that his lawyer failed to tell him that he had a constitutional right to testify. At the hearing Hrubec was represented by court-appointed counsel, testified on his own behalf, and called as a witness the Czech interpreter who had been provided to assist him at the hearing. The Government called Thomas Yeager, a probation officer who had prepared pretrial services and probation reports on Hrubec, and three attorneys—Richard Finkelstein, who was Hrubec's counsel at trial, and John Pacht and Thomas Concannon—all three of whom were with the Federal Defenders Unit of the Legal Aid Society at the time of Hrubec's trial. All of the Government witnesses testified that, during their various dealings with Hrubec, they had had no trouble understanding Hrubec and had had no trouble making themselves understood by him. The three attorneys also testified that they had all advised Hrubec of his right to testify and, in fact, had engaged in protracted discussions with Hrubec over the advisability of him taking the stand in his own defense.

In a very thorough Report and Recommendation dated August 5, 1988, Magistrate Amon *inter alia* reported Hrubec's claims of ineffective assistance of counsel

to be without merit and recommended that Hrubec's petition be denied. More particularly, Magistrate Amon found that "Hrubec had a sufficient command of the English language at the time of his trial to understand the proceedings and consult with counsel." Report & Recommendation at 33. The Court adopted the Magistrate's Report and Recommendation and denied Hrubec's petition in a Memorandum–Decision and Order dated September 2, 1988, and on March 29, 1989, the Court of Appeals affirmed this Court's denial of Hrubec's petition "substantially for the reasons stated in the report and recommendation of Magistrate Carol Bagley Amon...." *Hrubec v. United States*, 875 F.2d 307 (2d Cir.1989).

Hrubec now moves this Court once again, this time in a double-barrelled application. *First,* he again petitions under 28 U.S.C. § 2255 (Case No. 89–CV–3038), asking that his conviction be vacated and the indictment dismissed because, as he claims, A) the "fundamental right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside was violated when a magistrate supervised selection of jurors;" B) 28 U.S.C. § 1827 was violated when "the court did not inquire about movant's ability to comprehend all stages of criminal proceedings, and when the court did not approve a waiver of interpreter, and where such waiver was not made expressly on the record;" C) "due process was violated when agents entering to search movant's home did not comply with [the] knock-and-announce requirement" of 18 U.S.C. § 3109; and D) "trial and appellate counsel were ineffective in failing to raise due process and Fourth Amendment challenge[s] to the search of movant's apartment on [the] ground that the searching agents did not know the scope of the search warrant." *Second,* Hrubec moves under Fed.R.Crim.P. 35 (Case No. 84–CR–566), claiming that the ten-year special parole term imposed by the Court was illegal and should be vacated. The Court addresses Hrubec's claims *seriatim.*

## I. THE § 2255 PETITION

### A. *Jury Selected By Magistrate*

There is no doubt that, in the afternoon of February 28, 1985, Chief Magistrate Chrein of this District presided over the jury *voir dire* of Hrubrec's trial. And, as Hrubec points out, in *Gomez v. United States,* —— U.S. ——, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), the Supreme Court unanimously reversed a conviction obtained in this District because a magistrate, rather than a federal district judge, had presided over jury selection. In *Gomez* the Court held that a magistrate's presiding over the selection of a jury in a felony trial *"without the defendant's consent"* was unauthorized by the Federal Magistrates Act, and thus violated the defendant's right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside. 109 S.Ct. at 2239, 2248 (emphasis added). Accordingly, Hrubec claims that his conviction should therefore be vacated. To apply this principal, the Court must first decide the threshold question of *Gomez*'s retroactivity.

#### 1. Retroactivity

*Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), decided the same term as *Gomez,* related to the application to petit juries of the Sixth Amendment requirement of a representative cross-section of the community that had theretofore been applied only to juror pools from which petit juries are drawn. Before reaching that issue, however, a plurality of the Supreme Court set out standards regarding retroactivity of new constitutional rules of criminal procedure when a court is urged to announce and apply those rules for the first time in collateral federal *habeas corpus* attacks on state criminal convictions under 28 U.S.C. § 2254. The *Teague* plurality, adopting guidelines that had previously been suggested by Justice Harlan, stated that the question of retroactivity in such cases must be decided at the outset due to concerns of comity, finality, equality of treatment for those similarly situated, and avoidance of constitutional adjudication. The plurality stated that normally a new constitutional rule of criminal proce-

dure should not be announced in, and applied retroactively to, collateral attacks upon convictions unless: 1) the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *id.* at 1075; or 2) the new rule is the kind of absolute prerequisite to fundamental fairness that is implicit in the concept of "ordered liberty"—i.e., the new rule announces a bedrock procedural element, violation of which would seriously diminish the likelihood of obtaining an accurate conviction. 109 S.Ct. at 1077. In regard to the retroactivity issue in *Teague,* Justice White, found that the plurality's approach "is an acceptable application in collateral proceedings of the theories embraced by the Court in cases dealing with direct review," and concurred in that result. 109 S.Ct. at 1079.[1]

However, despite the division of opinion in *Teague,* just four months later, in *Penry v. Lynaugh,* — U.S. —, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), the Court, although severely divided on other issues having to do with capital punishment for mentally retarded defendants, unanimously agreed that 1) in collateral proceedings retroactivity of a new constitutional rule of criminal procedure is a threshold question; and 2) such a rule is not to be applied in a collateral proceeding unless it meets one of the two exceptions discussed above. 109 S.Ct. at 2952. *See also Sawyer v. Butler,* 881 F.2d 1273, 1279–81 (5th Cir.1989) (*en banc*) (discussing the individual opinions of the Justices in *Teague* and *Penry*'s effect thereon), *cert. granted sub nom., Sawyer v. Smith,* — U.S. —, 110 S.Ct. 835, 107 L.Ed.2d 830 (1990). The Court's opinion in *Penry* dealt only with the first exception and did not articulate what the second exception covered, thus avoiding the divisive issue of whether the "ordered-liberty" exception includes a requirement that the rule sought to be retroactively imposed in-

creases the likelihood of "accuracy of conviction." Finally, in *Saffle v. Warden,* — U.S. —, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), in holding neither exception applicable to a collateral attack upon a charge given to a sentencing jury in a capital case, a majority of the Court made it clear that the second exception exists for "watershed rules of criminal procedure implicating the fundamental fairness *and accuracy of the criminal proceeding.*" *Id.* at 1263 (emphasis added). Thus, under the second exception a new rule of criminal procedure must implicate the accuracy of the petitioner's conviction in order to be applied retroactively in collateral proceedings—in other words, *Teague*'s bar on retroactivity applies unless violation of the new rule of criminal procedure increases the likelihood that an innocent man will be convicted. *See also Butler v. McKellar,* — U.S. —, 110 S.Ct. 1212, 1217–18, 108 L.Ed.2d 347 (1990).

The plurality decision of *Teague* as adopted by *Penry* and *Saffle,* does not, however, necessarily apply to this case for two reasons: (1) *Teague* (and later, *Penry, Saffle,* and *Butler*) dealt with *habeas corpus* proceedings under 28 U.S.C. § 2254. *See* 109 S.Ct. at 1084 n. 1 (Brennan, J., dissenting) ("[t]he plurality does not address the question whether the rule it announces today extends to claims brought by federal as well as state prisoners"). Thus, *Teague*'s concerns of comity are not present here in these proceedings under 28 U.S.C. § 2255, as no question arises as to the deference due to the concomitantly sovereign state courts. Of course, *Teague*'s concerns of finality, equality of treatment for those similarly situated, and avoidance of constitutional adjudication are also often present in a § 2255 proceeding. (2) The standards set down by *Teague* dealt with the retroactivity of newly extended constitutional rules of criminal procedure. Furthermore, these standards dealt not only

---

**1.** Justice Stevens, joined by Justice Blackmun, concurred, but was unable to agree with the "accurate-conviction" element incorporated by the plurality into the "ordered-liberty" exception to the bar on retroactivity in collateral proceedings. *Id.* at 1079–82. Justice Brennan, joined by Justice Marshall, vigorously dissented to incorporating an "accurate-conviction" element into the "ordered-liberty" exception and additionally opposed the making of retroactivity a threshold determination. *Id.* at 1084–94.

with new constitutional rules of criminal procedure, but such rules when *habeas* courts are asked to apply them for the first time ever. Here, the Supreme Court has already announced the *Gomez* "rule," and that rule is based not on constitutional construction but on statutory interpretation of the Federal Magistrates Act.[2]

■ Although *Teague* and this case differ, the Court holds that the rules of retroactivity set forth in *Teague* are applicable to § 2255 proceedings where, as here, the petitioner urges retroactive application of new, already-announced, non-constitutional rules of criminal procedure such as *Gomez*. This result is logically dictated, because if *Teague*'s retroactivity standard and the two exceptions thereto are applicable to alleged constitutional violations, it follows *a fortiori* that *Teague* must be applicable to violation of a statute, which is of lesser importance. Policy, too, dictates *Teague*'s application since concerns of finality are just as present here in this collateral attack on a federal conviction as they were in *Teague*. "Without finality, the criminal law is deprived of much of its deterrent effect." *Teague*, 109 S.Ct. at 1074. Here Hrubec has already been afforded a suppression hearing, a trial by jury, a direct appeal to the Court of Appeals, a collateral attack on his conviction under § 2255 passed upon by a magistrate and a district judge, and an appeal from the denial of the § 2255 petition. A convicted criminal must eventually come to the realization that he has been given a fair trial, has been found guilty by a jury of his peers, and has had a sentence imposed upon him which he indeed must serve. As

Justice Harlan said: "No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation." *Williams v. United States*, 401 U.S. 675, 691, 91 S.Ct. 1171, 1179, 28 L.Ed.2d 388 (1971) (Harlan, J., concurring). The goal of finality would be thwarted if every new rule of criminal procedure could potentially lead to the collateral overturning of an otherwise valid conviction.

In sum, then, *Teague* requires that its standards of retroactivity be applied to *Gomez* in this proceeding.

### 2. *Teague* Applied To *Gomez*

■ *Teague* instructs this Court first to decide whether *Gomez* announced a "new" rule. *See Saffle*, 110 S.Ct. at 1259–60.

> In general ... a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government..... To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

*Teague*, 109 S.Ct. at 1070 (emphasis in original). Given this standard, *Gomez* clearly announced a "new" rule. The Supreme Court had not spoken on the issue, there was a split in the circuit courts, and the trend prior to *Gomez* was toward expanding the authority of magistrates. *United States v. Rubio*, 722 F.Supp. at 84–85. Thus, *Teague* instructs that to be retroactively applicable here *Gomez* must fall into

---

**2.** Some cases have recognized the differences between *Teague* and non-constitutional cases arising under § 2255; other cases, apparently, have held *sub silentio* that those differences are insignificant. *See, e.g., United States v. Ayala*, 894 F.2d 425, 429 n. 8 (D.C.Cir.1990) (assuming that *Teague*'s "painstakingly formulated 'retroactivity' rules" are applicable to § 2255 proceedings); *United States v. Lopez–Pena*, 890 F.2d 490, 493 n. 3 (1st Cir.1989) (same) (withdrawn from publication; rehearing pending and rehearing *en banc* filed); *United States v. France*, 886 F.2d 223, 226, 227 n. 2 (9th Cir.1989) (applying to *Gomez* standards having to do with retroactivity on direct appeal of new constitution-

al rules; leaving open the question of whether *Gomez* should be given retroactive effect in collateral proceedings, *"see"*-citing *Teague*); *United States v. Makaweo*, 730 F.Supp. 1016 (D.Hawaii 1990) (applying *Teague* to *Gomez*; recognizing that *Gomez* involved a non-constitutional procedural rule); *United States v. Baron*, 721 F.Supp. 259, 261 (D.Hawaii 1989) (recognizing that *Gomez* involved statutory interpretation whereas *Teague* involved constitutional adjudication; applying *Teague* to § 2255 proceedings); *United States v. Rubio*, 722 F.Supp. 77, 84 (D.Del.1989) (applying *Teague* in § 2255 proceeding brought based on *Gomez*).

one of two exceptions. *See Penry*, 109 S.Ct. at 2952. The question of retroactivity therefore depends on two narrow exceptions which may be difficult in application.

The first *Teague* exception to non-retroactivity in collateral proceedings—i.e., "that a new rule should be applied retroactively if it places certain kinds of primary, private conduct beyond the power of the criminal law-making authority to proscribe," 109 S.Ct. at 1075 (internal quotation and citation omitted)—is not applicable here. *Gomez* said magistrates are not statutorily empowered to preside over the *voir dire* of juries without defendants' consent; it did not affect the power of the government to proscribe the conduct for which Hrubec was convicted, i.e., drug trafficking.

Nor is *Teague*'s second exception applicable here. Where a neutral, detached, experienced magistrate presides over the jury *voir dire*, it certainly is not more likely that an innocent man will be found guilty. *Cf. Id.* at 1077. *See Rubio*, 722 F.Supp. at 85.[3] When a magistrate presides over jury selection, fundamental fairness, "ordered liberty," and "accuracy of conviction" are adequately protected by the presence of the adversaries who are free to employ both their preemptory and forcause challenges and objections during the *voir dire*. Neither can it be said that having a judge rather than a magistrate preside over a jury *voir dire* is a "bedrock procedural element," *id.* at 1077. Indeed, "[b]y the time of the Court's decision in *Gomez*, no less than 51 districts had local rules expressly providing magistrates with authority to conduct voir dire." *Rubio*, 722 F.Supp. at 86.

In light of the foregoing, the Court holds that *Gomez* should not be applied retroactively in this § 2255 proceeding and that the portion of Hrubec's petition predicated upon *Gomez* must therefore be denied. *See also Gilberti v. United States*, 731 F.Supp. 576 (E.D.N.Y.1990) (McLaughlin, J.) (applying *Teague* to *Gomez;* holding *Gomez* non-retroactive to collateral proceedings).

### 3. Explicit Consent

■ In the alternative, however, if the Court found *Gomez* to be applicable here, it would offer Hrubec no solace. At the very beginning of the jury *voir dire* the following colloquy took place between Magistrate Chrein and Hrubec as shown by the *Transcript of Jury Selection Before the Honorable A. Simon Chrein, United States Magistrate*, dated February 28, 1985, at p. 2:

THE COURT: Mr. Hrubec, I am a United States Magistrate, I am not empowered by law to try this case. You have a right to have this case tried by a United States District Court Judge, a Judge of higher rank than myself.

Do you have any objection if I participate in this case to the extent of selecting a jury?

THE DEFENDANT: Can you repeat it?

THE COURT: You have the right to have this case tried by a District Judge, a Judge of higher rank than myself. You may or may not have the right to object to my selecting a jury, just picking the jury. Is it all right with you if I pick the jury?

THE DEFENDANT: Yes.

THE COURT: You've talked about this with [your attorney] Mr. Finkelstein?

THE DEFENDANT: Yes, I did.

Clearly Hrubec knowingly and voluntarily waived what *Gomez* characterized as his "basic" right "to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside." *See* 109 S.Ct. at 2248. Furthermore, the Second Circuit has interpreted *Gomez* not to apply where the defendant consents or fails to object to a magistrate-conducted jury *voir dire*. *See United States v. Vanwort*, 887 F.2d 375, 382–83 (2d Cir.1989); *United States v. Mang Sun Wong*, 884 F.2d 1537 (2d Cir.), *petition for reh'g denied, id.* at 1544, 1546

---

**3.** *But see United States v. France*, 886 F.2d at 226 (*Gomez* decision was grounded in notions of trial accuracy); *United States v. Baron*, 721 F.Supp. at 262 (same; therefore applying *Gomez* retroactively in collateral proceeding). *But see* also *United States v. Wey*, 895 F.2d 429 (7th Cir.1990) (criticizing *France*'s approach to *Gomez* ); *United States v. Makaweo*, 730 F.Supp. 1016 (D.Hawaii 1990) (disagreeing with *Baron* regarding retroactivity of *Gomez* ).

(2d Cir.1989) ("we do not read *Gomez* as requiring reversal of a felony conviction where, as here, there was not only a failure to object, but explicit consent to the magistrate's selection of a jury"), *cert. denied,* — U.S. ——, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990). Thus, even were the Court to apply *Gomez* here retroactively, Hrubec's petition would have to be denied insofar as it relies on *Gomez* because of his explicit consent to the magistrate's selection of his jury.

### B. *No Inquiry As To Need For Interpreter*

Hrubec next claims that the Court violated 28 U.S.C. § 1827 by failing to inquire of his need for an interpreter at trial.[4] Section 1827 codifies prior case law which had recognized that a criminal defendant is entitled to an interpreter if he cannot understand the proceedings against him. *See United States ex rel. Negron v. New York,* 434 F.2d 386 (2d Cir.1970).

 Several courts have interpreted § 1827 as imposing a mandatory duty on the trial court "to inquire as to the need for an interpreter *when a defendant has difficulty with English." Valladares v. United States,* 871 F.2d 1564, 1565 (11th Cir. 1989) (Powell, J., sitting by designation) (emphasis added). *See also United States v. Tapia,* 631 F.2d 1207, 1209 (5th Cir. 1980). As the underscored language from *Valladares* indicates, however, the fact that a defendant's primary language is something other than English does not *ipso facto* create the duty to inquire of the need for an interpreter. As § 1827 itself states, that duty arises only when, in addition to English not being the defendant's primary language, the defendant's language difficulties would "inhibit [his] comprehension of the proceedings or communication with counsel or the presiding judicial officer."

Contrary to Hrubec's assertion, this Court was not insensitive to the needs of a non-English-speaking criminal defendant. *See United States ex rel. Negron v. New York,* 310 F.Supp. 1304 (E.D.N.Y.), *aff'd,* 434 F.2d 386 (2d Cir.1970). In light of Magistrate Amon's finding that "Hrubec had a sufficient command of the English language at the time of his trial to understand the proceedings and consult with counsel," Report & Recommendation at 33, and in light of a careful review of the transcript of all the proceedings had in this case, it is clear that Hrubec had no language difficulties that would impair his comprehension of the proceedings or his communication with counsel or the Court. Accordingly, the Court never had any indication that Hrubec had any need to utilize the services of an interpreter, and therefore § 1827 was not violated.

### C. *Non-compliance With "Knock–And–Announce Requirement"*

Hrubec contends that the evidence seized from the search of his home should have been suppressed due to the failure of the searching officers to comply with 18 U.S.C. § 3109. That statute provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

*Id.* Evidence seized in violation of § 3109 may be suppressed. *Miller v. United States,* 357 U.S. 301, 313–14, 78 S.Ct. 1190, 1197–98, 2 L.Ed.2d 1332 (1958); *United States v. Spinelli,* 848 F.2d 26, 28 (2d Cir. 1988); *United States v. DiCesare,* 765 F.2d 890, 895 (9th Cir.1985).

---

**4.** At the time of trial the pertinent portion of § 1827 read accordingly:

The presiding judicial officer ... shall utilize the services of the most available certified interpreter ... in any criminal or civil action initiated by the United States in a United States district court ... if the presiding judicial officer determines on such officer's own motion or on the motion of a party that such

party (including a defendant in a criminal case) ... speaks only or primarily a language other than the English language ... so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer....

Interpreters Act, Pub.L. No. 95–539, § 1827(d), 92 Stat. 2040 (1978).

Section 3109 is merely a re-codification of a similar, if not identical, "knock-and-announce" requirement imposed by the common law and possibly even by the Fourth Amendment, *see, e.g., United States v. Miller*, 357 U.S. 301, 313, 78 S.Ct. 1190, 1197, 2 L.Ed.2d 1332 (1958) (§ 3109 codifies "a tradition embedded in Anglo–American law"); *United States v. Francis*, 646 F.2d 251 (6th Cir.), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981); *United States v. Valenzuela*, 596 F.2d 824 (9th Cir.), *cert. denied sub nom., Lizarraga v. United States*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979); *cf. Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), and the Supreme Court has accordingly indicated that § 3109 is not to be given "grudging application," *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) (§ 3109 applied to officer's opening of closed but unlocked door). Furthermore, although there must be a "breaking" for § 3109 to be applicable, the Supreme Court has stated that the use of force is not necessary for there to be a "breaking" under the statute—what is proscribed by the statute is an unannounced intrusion into a dwelling. *Id.* at 590, 88 S.Ct. at 1758. However neither § 3109 nor the Fourth Amendment was violated when the officers executed the search warrant in the instant case.

■ Initially it is clear that a "breaking" under § 3109 did not occur the first time the postal inspector entered Hrubec's apartment building to deliver the package of cocaine that had been mailed to him from Colombia. (SH [5] 28, 190–91) As an importer of cocaine through the mails, Hrubec had converted his home into a commercial delivery center to which the United States Postal Service and its agents were invited, and his criminal activity was therefore "entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street." *Cf. Lewis v. United States*, 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966). Accordingly, Hrubec will not be heard to complain that the sanctity of his apartment building was violated by the fact that the Postal Service employee who delivered the package also happened to be a law enforcement officer.

■ Regarding the second entry, the testimony at the suppression hearing showed that the officers gained entry into Hrubec's apartment building's outer door through a ruse. Hrubec "buzzed" the officers in through the building's outer door after the postal inspector falsely told Hrubec over the intercom that he had forgotten to obtain a signature he required for the delivery of the package. (SH 34–35, 109, 193) It has been repeatedly held that this type of ruse in execution of a search warrant violates neither § 3109 nor the Fourth Amendment. *See, e.g., United States v. Salter*, 815 F.2d 1150, 1152 (7th Cir.1987) (no violation of § 3109 where ruse was used to get defendant to open hotel room door); *United States v. Raines*, 536 F.2d 796, 800 (8th Cir.) (entry by invitation, without force, though obtained by ruse, was not a "breaking" under § 3109) (citing cases), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976).[6]

■ Finally, no violation was occasioned by the officers' entering Hrubec's apartment door to execute the search warrant once they had been admitted by ruse through the apartment building's outer door. At the suppression hearing the offi-

---

**5.** Citations are to the transcript of the suppression hearing held February 27–28, 1985.

**6.** *See also United States v. DeFeis*, 530 F.2d 14, 15 (5th Cir.) ("An entry obtained without force by ruse or deception is not a violation of section 3109") (citing cases), *cert. denied*, 429 U.S. 830, 97 S.Ct. 92, 50 L.Ed.2d 95 (1976); *United States v. Hill*, 508 F.2d 345, 347 (5th Cir.) (same), *cert. denied*, 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 672 (1975); *United States v. Phillips*, 497 F.2d 1131, 1134 (9th Cir.1974) (entry by ruse does not violate § 3109); *United States v. Bradley*, 455 F.2d 1181, 1186 n. 12 (1st Cir.1972) (collecting cases), *aff'd*, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973); *United States v. Beale*, 445 F.2d 977, 978 (5th Cir.1971) (despite *Sabbath*, entry by ruse does not constitute "breaking" under § 3109 because occupant, not agents, removes physical barrier preventing their entry), *cert. denied*, 404 U.S. 1026, 92 S.Ct. 697, 30 L.Ed.2d 676 (1972). *Cf. United States v. Sabbath*, 391 U.S. 585, 590 n. 7, 88 S.Ct. 1755, 1758 n. 7, 20 L.Ed.2d 828 (1968).

cers testified that as they came up the stairs to Hrubec's apartment, Hrubec was standing in the open doorway of the apartment watching the officers arrive. As they approached and entered the door of the apartment the officers said, "Police, Federal Agents, you're under arrest. We have a warrant to search your premises." (SH 36–37, 40, 113, 193) Once the officers were in the apartment Hrubec stated, "What took you so long, I knew you were coming. Although you think you're so smart, I noticed one of your surveillance vehicles outside." (SH 37–38) Hrubec then remarked of the postal inspector's appearance, "He does not look like a real postman." (SH 38) These facts indicate that § 3109 was not applicable to the entry of Hrubec's apartment: the door was wide open and there was accordingly no "breaking" since there was no physical barrier that the officers removed. *See Beale,* 445 F.2d at 978 (while § 3109 requires no force to constitute a "breaking," there must at least be a physical barrier removed by the officers). Furthermore, since Hrubec was standing in the door to the apartment watching the officers approach, and since the officers immediately announced their identity and their purpose, none of the policies § 3109 was designed to protect were implicated[7]—there was no chance of violence to limb or property through surprise or mistake, and Hrubec's privacy interests had been waived by his opening the door. *Cf. Kane,* 637 F.2d at 977; *Phillips,* 497 F.2d at 1131. Alternatively, even if § 3109 was applicable the officers certainly complied with it by announcing their identity and purpose before crossing the threshold of Hrubec's apartment.

The Court concludes that neither the Fourth Amendment nor § 3109 was violated by the controlled delivery or by the officers' entry to execute the search warrant.

### D. *Ineffectiveness of Trial and Appellate Counsel*

■ Hrubec also claims that he was denied effective assistance of counsel through the alleged failure of his trial and appellate counsel to object to the search of his apartment on the basis that the officers did not know the scope of the warrant.

> The Fourth Amendment provides that
>
> no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized.*

U.S. Const. amend. IV (emphasis added). The requirement that search warrants particularly describe the place to be searched and the things to be seized is designed to leave nothing to the discretion of the officers who execute the search warrant. *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). It was drafted to prevent the type of general searches that were justifiably abhorred by the Framers. *United States v. Dubrofsky,* 581 F.2d 208, 213 (9th Cir.1978).

After the controlled delivery of the package of cocaine to Hrubec's apartment, the officers radioed to the United States Attorney's Office to apply for a search warrant. Subsequently the officers received a message that the warrant had been signed and that they were authorized to search Hrubec's apartment.[8]

The officers searched the living room, the bedroom, the kitchen, and a work area in the apartment, and found $900 in currency, a "hot box" for testing the purity of cocaine, plastic baggies, straws, a portable

---

**7.** Three policies have been identified as being embodied in § 3109's knock-and-announce requirement: 1) it reduces the potential of violence to the police and the occupants of the home by preventing officers from being mistaken for someone who has no right to be there; 2) it prevents damage to property that might be needlessly destroyed in a forced entry; and 3) it safeguards the individual's privacy interests in his home. *United States v. Kane,* 637 F.2d 974, 977 (3d Cir.1981) (citing cases); *United States v. Phillips,* 497 F.2d 1131 (9th Cir.1974).

**8.** The warrant was routine, and authorized the officers to search for "a quantity of cocaine hydrochloride, scales, bags, cutting agents, dilutant, records, money, weapons, and other narcotics paraphernalia, which are evidence of a violation of Title 21, United States Code, Sections 841, 952(a) and 960(a)(1)."

scale, cutting glass, papers with numbers on them which appeared to be records, travel brochures for Colombia, four books ("New I.D. in America: How to Create a Fool–Proof New Identity," "The Cocaine Tester's Handbook," "The Complete Book of International Smuggling," and "Moma Coca"), an address book, a 1984 pocket calendar, and photos showing Hrubec in a tropical locale. Originally unable to find the cocaine, the officers continued to search the apartment until they realized that Hrubec had thrown the cocaine in a bag in the garbage outside after the controlled delivery but before the officers had returned to execute the search warrant.

Although there was no testimony precisely on the issue Hrubec now raises, it is clear that the officers substantially knew the scope of the warrant. On cross-examination of DEA Agent George Rakowsky, who was the officer in charge of the search, Hrubec's attorney asked, "But [the officers] were also aware, were they not, that there was a warrant, a warrant to search for contraband?" To which Agent Rakowsky answered, "Yes." (SH 114) Furthermore, as all of the searching officers had also taken part in the controlled delivery they were aware of the nature of the case and doubtless knew that the warrant authorized them to specifically look for the cocaine and evidence of violation of the laws having to do with importation and possession of cocaine. Moreover, the party of searching officers had a wealth of experience,[9] and had no reason to believe that the warrant authorized a greater or lesser search than in other cases in which they had participated.

Additionally, the search was no broader than it had to be to find the cocaine. The search naturally intensified with time as the cocaine remained undiscovered, but the search at no time broadened into a general search—in fact, nothing more was found

than that for which the warrant actually authorized a search and seizure. Under these circumstances, the execution of the warrant would have been upheld at trial, and Hrubec was not denied effective assistance of counsel for "failure" to raise this issue. *See Dubrofsky*, 581 F.2d at 213.

## II. THE RULE 35 MOTION: SPECIAL PAROLE

 Finally we come to the end of Hrubec's catalogue of claims. Citing *United States v. Phungphiphadhana*, 640 F.Supp. 88 (D.Nev.1986) and related cases, Hrubec moves under Fed.R.Crim.P. 35(a), claiming that the 10–year special parole term to which he was sentenced was illegal.

*Phungphiphadhana* and its progeny recognized that in 1984 Congress made a mistake when it tinkered with the sentencing provisions of 21 U.S.C. § 841(a), the drug conspiracy statute. "What seems to have happened is that the people who drew up the statute slipped a cog." *United States v. Sanchez*, 687 F.Supp. 1254, 1256 (N.D.Ill. 1988). Prior to October 12, 1984, special parole was expressly mandated for all convictions of drug distributors under § 841(a). *United States v. Byrd*, 837 F.2d 179, 180 (5th Cir.1988). However, after that date and until November 1, 1989, while special parole continued to be mandated to accompany any sentence of imprisonment for an offense involving less than a kilogram of cocaine, *Sanchez*, 687 F.Supp. at 1256, imposition of special parole for offenses involving a kilogram or more was, inadvertently, not authorized, *Hernandez Rivera v. United States*, 719 F.Supp. 65, 66 (D.Puerto Rico 1989). Without offering a detailed explanation of the reasons behind this scenario, suffice it to say that this Congressional slip-up offers Hrubec no solace because at the time of the commission of the conspiracy for which he was convicted (on or before April 24, 1984) and at the

---

**9.** At the time of the search, lead agent Rakowsky had had five years' experience with the DEA and had been working on cocaine investigations for two years with the New York Drug Enforcement Task Force. Likewise, Postal Inspector Mahoney had been with the law enforcement division of the Post Office for 2 years; Sergeant Edward Klein had been with the New York City Police Department for 19 years, and for 2 years had been assigned to the New York Drug Enforcement Task Force; and Officer Chevrier had been with the New York State Police for 11 years.

time of the sentencing (April 26, 1985) a term of special parole was expressly authorized in cases such as his which involved 159 grams of cocaine. The same holds true for the sentence of special parole under 21 U.S.C. § 960(b)(2) imposed for his conviction under 21 U.S.C. § 960(a)(1). At the time the offense was committed, special parole was authorized for a violation of § 960(a)(1), Controlled Substances Import & Export Act, Pub.L. No. 91–513, § 1010(b), 84 Stat. 1285, 1290 (1970), *codified at* 21 U.S.C. § 960(b) (1982), and at the time of sentencing, special parole was authorized for violations of § 960(a)(1) involving less than one kilogram of cocaine, Controlled Substances Penalties Amendments Act of 1984, Pub.L. 98–473, § 502, 98 Stat. 2068 (1984), *codified at* 21 U.S.C. § 960(b)(2) (Supp. III 1985). Accordingly, Hrubec's sentences of special parole are proper and his motion under Fed.R.Crim.P. 35(a) is denied.

## CONCLUSION

For the above reasons, Hrubec's petition under 28 U.S.C. § 2255 (89–CV–3038) is DISMISSED, and his motion under Fed.R. Crim.P. 35(a) (84–CR–566) is DENIED.

SO ORDERED.